**David SEIGAL and Ethel Seigal,
Plaintiffs,**

**v.**

**David MERRICK et al., Defendants.**

**Harry GEHLER, Plaintiff,**

**v.**

**John P. EDMONDSON et al.,
Defendants.**

**Nos. 74 Civ. 2475, 74 Civ. 2630.**

United States District Court,
S. D. New York.

March 11, 1976.

Gold, Farrell & Marks by Martin R. Gold, Leonard M. Marks, Charles B. Orther, Eric Bregman, New York City, for plaintiffs Seigal.

Morris J. Levy, New York City, for plaintiff Gehler.

Rembar, Wolf & Curtis by Mortimer B. Wolf, Frank R. Curtis, New York City, for defendant Merrick.

Skadden, Arps, Slate, Meagher & Flom by Robert W. Sweet, Thomas J. Schwarz, Douglas M. Kraus, New York City, for defendants Directors of Twentieth Century-Fox Film Corp.

Rosenman, Colin, Kaye, Petschek, Freund & Emil by Joseph Zuckerman, New York City, for defendant Twentieth Century-Fox Film Corp.

## OPINION ON MOTION TO DISMISS AND FOR OTHER RELIEF

MOTLEY, District Judge.

Defendants have moved to dismiss the complaints in these shareholders' derivative actions on the ground that 1) they fail to state a claim under the Securities Exchange Act of 1934, and 2) they fail to plead the circumstances constituting the alleged fraud with particularity. Rules 12(b)(6), 9(b), Fed.R.Civ.P.

Alternatively, defendants seek a consolidation and stay of these actions pending the outcome of several derivative actions filed in the Supreme Court of New York County and the Chancery Court of Delaware, New Castle County, by shareholders of Twentieth Century-Fox Film Corporation (Fox). Rule 42(a).

The *Seigal* complaint alleges, in essence, that: 1) David Merrick, a defendant, had acquired, by the end of March 1974, 747,900 shares of the common stock of Fox. This acquisition, which amounted to 9% of the outstanding common stock, made him the largest single Fox shareholder; 2) Concerned that Merrick might use his position to acquire control of Fox, to dominate its affairs, and to replace its management, the directors on May 23, 1974 consummated a transaction whereby Fox purchased Merrick's shares for $6,800,000; 3) This represented a purchase price of $9.09 a share at a time when Fox stock was selling for approximately $5.875 per share; 4) Consequently, the directors caused Fox to pay Merrick a premium for his stock of approximately $2,400,000; 5) In effecting this transaction, the directors concealed from the corporation their true motives which supposedly were to eliminate dissension, to protect their personal interests, and to maintain control of Fox, in conflict with, contrary to, and without regard for the best interests of Fox. (Complaint ¶ 13).

Merrick is alleged to have conspired with, and aided and abetted the directors of Fox to commit the foregoing acts to the detriment of Fox and the personal benefit of himself and the directors (Complaint ¶ 15). As a further premium for the purchase of Merrick's stock, it is claimed that the directors terminated or agreed to terminate a lawsuit commenced against Merrick by Fox in April 1974 charging him with wrongful acts allegedly committed by him in the acquisition of Fox shares (Complaint ¶ 14).

The complaint then alleges that the foregoing constituted a device, scheme and arti-

fice to defraud; the making of untrue statements of material facts and omissions of material facts necessary in order to make the statement made, in the light of the circumstances under which they were made, not misleading; and acts, practices and a course of business which operates as a fraud and deceit; all in connection with the purchase and sale of securities; and by the use of means and instrumentalities of interstate commerce, the mails, and facilities of a national securities exchange; all in violation of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)), and Securities and Exchange Commission Rule 10b–5. (Complaint ¶ 16).

Finally, the complaint alleges that the foregoing facts constitute a breach of fiduciary duties by the individual defendants and a waste of corporate assets. (Complaint ¶¶ 17, 18).

The *Gehler* complaint is essentially the same as the *Seigal* complaint. In addition, however, it alleges that jurisdiction is based on diversity of citizenship in that Harry Gehler, the plaintiff, is a citizen and resident of Ohio and each defendant is a citizen and resident of some other state. The defendants in both actions are the corporation, Fox, the individual members of its board of directors, and David Merrick.

In the *Gehler* complaint there are also some allegations not made in the *Seigal* complaint. In *Gehler*, it is also alleged that: 1) Prior to March 1, 1974, David Merrick, a nationally prominent producer and writer of movies and Broadway shows, entered into a plan, scheme and conspiracy to secure working control of Fox by acquiring a substantial number of its shares for the purpose of using his dominant stockholder position to arrange for a noncompetitive contractual agreement with Fox to produce a number of pictures for Fox on terms and conditions which would bring him enormous and unusual profits; 2) In furtherance of such plan, Merrick initiated an illegal tender offer for the shares of Fox whereby he acquired 663,600 shares of Fox's common stock; 3) As a result of such action, Merrick's holdings in Fox were increased to 747,900 or 9% of the outstanding common stock; 4) Merrick attempted to use his position to compel the Fox Board to enter into an agreement which would be enormously profitable to Merrick; 5) Merrick threatened the management personnel of Fox with loss of their jobs if they refused to negotiate such a contract with him and threatened a proxy fight and/or tender offer for the control of Fox unless five of his nominees were placed on the Board; 6) The Board at first rejected Merrick's demands and on April 25, 1974 filed suit against him in this Court in which the Board sought to enjoin Merrick from acquiring any shares of Fox, from voting his shares or otherwise using the stock he had acquired to control or affect the management of Fox, and requiring him to divest himself of Fox shares and award Fox the damages it sustained by reason of Merrick's illegal conduct; 7) On May 21, 1974, less than a month after suit had been filed, and as a result of private negotiations with Merrick, the Board agreed, in writing, to dismiss the suit with prejudice and without costs and to purchase Merrick's stock for $6,750,000 or $9.03 per share, representing an illegal premium of more than $2,000,000. The agreement also provided that for a period of three years Merrick would not directly or indirectly acquire any Fox shares and would not become a participant directly or indirectly in any contest involving the election of Fox directors.

The complaint then alleges that the agreements entered into were with the knowledge and consent of the Board members. It further alleges that the individual Board members breached their fiduciary duties to Fox by causing it to pay the illegal premium in order that they could continue to remain in control of Fox and maintain themselves in office and power, and without serving any legitimate business purpose of the corporation. In addition it is alleged that the individual defendants made untrue oral and written statements to the shareholders of Fox regarding the purpose for the acquisition of Merrick's shares and have failed to state that the true purpose of such transactions was to maintain them-

selves in office through their control of Fox. The complaint finally alleges that the acts of defendants constitute a waste of corporate assets as well as a breach of fiduciary duty to Fox and its shareholders and further constitute the employment of a device, scheme, and artifice to defraud Fox and its shareholders, as well as a course of conduct which operated as a fraud upon Fox and its shareholders.

In support of their motions to dismiss, the defendant directors say: 1) The complaints are devoid of any allegation that any of the Fox directors who voted for the transaction was deceived as to any material fact relating to the transaction; 2) The complaint does not allege that Merrick dominated or controlled Fox's Board of Directors for the purpose of advancing his individual interests at the expense of the minority shareholders.

Defendants contend that, in the absence of such deception or improper control, the complaint fails to state claims under Section 10(b) and Rule 10b–5. At best, defendants say, the complaints set forth claims for corporate waste and mismanagement which are not cognizable under federal law.

Defendant Merrick joined in the motions to dismiss made by Fox and the individual defendants. He moved to dismiss on the additional grounds that as to him there is no allegation 1) that he deceived the corporation or anyone else in any manner with respect to the purchase of his stock by the corporation; 2) that he controlled the Board and by such control brought about the transaction in question; 3) that with knowledge of the director's true motives, he participated in and thus aided and abetted the alleged violation of Section 10(b) and Rule 10b–5 or conspired so to do. Moreover, Merrick says, there is no specific conduct alleged on his part, such as, misleading statements or fraudulent financial practices which would constitute a violation of the Securities Act or which shows that he aided and abetted such violation. Finally, Merrick says that as a non-director, a non-officer, non-insider, and a non-controlling shareholder he owed no fiduciary duty to the corporation.

For the reasons which follow the motions to dismiss must be denied.

■ In order to maintain an action for violation of Section 10(b) and Rule 10b–5, it is necessary that the plaintiff be either a purchaser or seller of securities in relation to a claimed violation. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). The instant actions are derivative actions brought by David and Ethel Seigal and Harry Gehler, three Fox shareholders, on behalf of Fox, the alleged purchaser of stock for an illegal premium from defendant David Merrick. *Wright v. Heizer Corporation*, 411 F.Supp. 23, CCH Fed.Sec.L.Rep. (current) ¶ 95,399 (N.D.Ill.1975). It is not necessary, as defendants claim, to the maintenance of a Section 10(b) and Rule 10b–5 action for the complaint to allege or for the proof to show that the corporation's directors were either deceived or improperly controlled with respect to such purchase. A cause of action under these provisions is stated where facts are alleged which, if proved, would show a breach of fiduciary duty within the contemplation of Section 10(b) and Rule 10b–5. *Green v. Santa Fe Industries, Inc.*, 533 F.2d 1283 (2d Cir. 1976); *Marshel v. AFW Fabric Corp. et al.*, 533 F.2d 1277 (2d Cir. 1975). Here plaintiffs claim that the corporation and stockholders were deceived by the directors failure to disclose their true motives in entering into the agreement with Merrick in violation of Rule 10b–2 and that the agreements with Merrick were in violation of the fiduciary duty owed by the directors to the corporation and its stockholders amounting to a violation of Rules 10b–1 and 10b–3.

In *Green* the court held that a complaint alleges a claim under Section 10(b) and Rule 10b–5 when it charges, in connection with a short-form merger, that the majority committed a breach of its fiduciary duty to deal fairly with minority shareholders by effecting the merger without any justifiable business purpose.

In *Marshel* the court held that when controlling stockholders and directors of a publicly-held corporation cause it to expend corporate funds to force elimination of minority stockholders' equity participation for reasons not benefiting the corporation but rather serving only the interests of the controlling stockholders such conduct will be enjoined pursuant to Section 10(b) and Rule 10b–5.

In the *Seigal* complaint it is alleged that the individual directors of Fox caused the expenditure of millions of dollars of corporate funds "to eliminate dissension, to protect their personal interests, and to maintain control of Fox, in conflict with, contrary to, and without regard for the best interests of Fox." It is specifically alleged that the acts complained of constitute a device, scheme and artifice to defraud, Rule 10b–1, and acts, practices, and a course of business which operated as a fraud and deceit, Rule 10b–3. It is also specifically alleged that the directors failed to reveal their true motives in effecting the purchase of stock from Merrick. Rule 10b–2. Rule 10b–5 provides as follows:

> "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,
>
> (1) to employ any device, scheme, or artifice to defraud,
>
> (2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

As the Court said in *Green,* "While the 'fraud' at which 10b–5 is aimed obviously includes the classic examples of misrepresentation and nondisclosure . . . , it is by no means limited to that type of illegality." (at p. 1289). The Court reiterated that directors and controlling shareholders are fiduciaries whose dealings with the corporation are subject to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the directors or controlling stockholders not only to prove the good faith of the transactions *but also to show its inherent fairness from the point of view of the corporation and those interested in it.* (at 1290).

In the instant complaints it is alleged, in essence, that the purchase of Merrick's shares was for a consideration far above the market price and included an agreement to dismiss, with prejudice, the Fox suit for damages against Merrick. The claim is that these considerations were unfair to the corporation since the sole motivation for the agreements was the desire on the part of the defendant directors to eliminate a threat to their officer positions and control of the corporation and not a desire to benefit Fox.

The complaints further allege that Merrick conspired with and aided and abetted the directors in this breach of duty. As this court noted in a similar context, "[t]he aiding and abetting concept applies to securities transactions." *Securities & Exchange Commission v. Manor Nursing Centers, Inc.,* 340 F.Supp. 913, 934 (S.D.N.Y.1971), *aff'd in part and rev'd and rem'd in part,* 458 F.2d 1082 (2d Cir. 1972), citing *Securities & Exchange Commission v. North American Research and Development Corp.,* 424 F.2d 63, 81–82 (2d Cir. 1970); *Brennan v. Midwestern United Life Ins. Co.,* 259 F.Supp. 673, 681–682 (N.D.Ind.1966); *Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 410 F.2d 135 (7th Cir. 1969). The only aspect of the aiding and abetting principle in the instant case which is somewhat novel is its potential application to the breach of fiduciary duty charge made against the directors. In *Green,* the Second Circuit considered the potential liability of Morgan Stanley & Co., which was the company engaged by the defendant majority stockholders to value the stock at issue and to compile a report

detailing the company's financial status. The Court concluded, with regard to an alleged undervaluation of the stock, that "the conclusory allegations that Morgan Stanley & Co. acted wilfully, as an accessory and as an aider and abettor in setting the value . . . are plainly insufficient." (p. 1292). However, the Court did not confront the issue of whether Morgan Stanley & Co. might be held liable for aiding and abetting in the breach of fiduciary duty, because "Morgan Stanley & Co. [had] not been charged with participation in the majority shareholders' breach . . ." (p. 1292). The clear implication is that Morgan Stanley & Co. might have been subject to such liability were it not for the absence of "any claim that [it] was in any way involved in planning or effectuating the merger, or that it shared in the alleged profiteering and faithless conduct of the majority shareholders . . . ." (p. 1293).

This extension of the aiding and abetting principle is not all revolutionary in scope, for it has been consistently applied in the context of state law causes of action for breach of fiduciary duty. In *Oil & Gas Ventures–First 1958 Fund, Ltd. v. Kung*, 250 F.Supp. 744 (S.D.N.Y.1966), Judge Weinfeld stated the settled legal principle:

> "One who knowingly participates in or joins in an enterprise whereby a violation of a fiduciary obligation is effected is liable jointly and severally with the recreant fiduciary. Even assuming Kung himself did not stand in a direct fiduciary relation to the plaintiffs, he is charged with having conspired knowingly with those who were their fiduciaries. The charge having been made, suit to enforce the claimed liability may properly be maintained in this court." 250 F.Supp. at 749.

The *Seigal* complaint alleges that at all times relevant to a consideration of the case Fox had outstanding 8,280,000 shares of its common stock (¶ 9); that by the end of March 1974 Merrick had acquired 747,900 shares of the common stock of Fox (¶ 10); that this made Merrick the largest single shareholder of Fox and the owner of approximately 9% of the outstanding shares (¶ 10); that the directors, concerned that Merrick might utilize his position as the largest shareholder of Fox to acquire control of Fox, decided to protect their control positions by purchasing Merrick's stock for a premium (¶ 12, 13); and agreed to terminate a lawsuit commenced against Merrick by Fox in April 1974 which had charged Merrick with wrongful acts in connection with his acquisition of the stock and other wrongful acts against Fox (¶ 14). The complaint then alleges that Merrick conspired with, and aided and abetted the directors in the foregoing acts complained of to the detriment of Fox and for the personal benefit of himself and the directors (¶ 15).

The *Gehler* complaint alleges that Merrick entered into a scheme and conspiracy to secure working control of Fox; that he attempted to use his position as the largest single shareholder to force a contract with Fox which would bring him enormous profits; that he threatened the incumbent management with displacement unless they acceded to his demands, which included placing five of his nominees on the Board of Directors; that the premium received by Merrick for his stock was in exchange for his actual or potential control of Fox; that each of the individual defendants engaged in a conspiracy to illegally use the assets and funds of Fox for the purpose of gratuitously benefiting themselves (¶ 29); that each of the individual defendants participated in the conspiracy and aided and abetted each other in effectuating the acts complained of for their own selfish interests (¶ 30); that the individual defendants, "with knowledge and consent of each other", employed devices and schemes which constitute artifices to defraud the corporation and its stockholders by omitting to state material facts and engaged in a course of conduct which operated as a fraud upon Fox and its stockholders in connection with Fox's purchase from Merrick (¶ 35); that the schemes and devices used to defraud Fox and its shareholders consisted of the failure of the individual defendants to fully and adequately disclose to the stock-

holders the true facts, purposes and reasons for the agreements under which the Fox suit against Merrick was dismissed and Merrick's shares purchased at an exorbitant and illegal premium (¶ 36); that the individual defendants made and caused to be made false and misleading statements in connection with the purpose for Fox's purchase of Merrick shares (¶ 37).

In light of the foregoing specific allegations of the complaints relating to the alleged breach of duty on the part of the individual defendant directors and the knowing participation of Merrick in the alleged breach of duty and the specific allegation that Merrick profited financially from the alleged breach of duty, the complaints cannot be dismissed as to the individual defendants or as to defendant Merrick.

■ Defendants have moved, in the alternative, for a stay of the instant actions pending the outcome of several actions filed in the New York and Delaware courts raising the same state law claims of breach of fiduciary duty and corporate waste which are also raised in the instant complaints.

■ The fact that the allegations in the instant complaints also state a cause of action under state law, and the fact that several similar state causes of action in their preliminary stages are pending, are not controlling considerations here. As the court said in *Green, supra*, citing *Popkin v. Bishop*, 464 F.2d 714, 718 (2d Cir. 1972), "Where Rule 10b–5 properly extends it will be applied regardless of any cause of action that may exist under state law." (at 1286).

■ The plaintiffs in these actions are not plaintiffs in the state court actions. The instant actions state a federal claim which cannot be adjudicated in the state courts.[1] The Federal Rules of Civil Procedure relating to discovery are more liberal than the New York rules, C.P.L.R. The cases in the state courts are similar to the instant cases and, therefore, little additional work needs to be done by all parties concerned as a result of this federal suit. *Weisfeld v. Spartans Industries, Inc.*, 58 F.R.D.

570 (S.D.N.Y.1972). For these reasons the requested stay of the instant actions is denied.

■ Counsel for plaintiffs in both of the instant actions agree with defendants that these actions should be consolidated. The court finds that the complaints are similar and arise out of the same transactions. The actions will therefore be consolidated.

Counsel for the *Seigal* plaintiffs have asked to be appointed lead counsel. The *Seigal* action was filed about two weeks before the *Gehler* action. A review of the affidavit of Martin R. Gold reveals that the firm of Gold, Farrell & Marks specializes in federal civil matters, particulary federal securities actions. All members of that firm have been litigation associates at Paul, Weiss, Rifkind, Wharton & Garrison or Rosenman, Colin, Kaye, Petschek, Freund & Emil. In addition two of the partners in the firm have served as Assistant United States Attorneys, one of whom was Mr. Gold. Mr. Gold has also been appointed by this court to act as a trustee for the liquidation of two separate brokerage firms, pursuant to the Securities Investor Protection Act of 1970. The firm, through Mr. Gold, has been diligent in the prosecution of this action. Finally, Mr. Gold and his firm have expressed in their brief a willingness to consult with counsel for the *Gehler* plaintiff.

For all of the foregoing reasons, the court will, at this juncture, appoint Martin R. Gold of Gold, Farrell, & Marks lead counsel for all pretrial purposes in these consolidated actions.

---

**1.** 15 U.S.C. § 78aa.