**William MALDONADO, Plaintiff,**

v.

**William H. FLYNN, Sam Israel, Jr., A. G. Gueymard, J. B. Harrison, Ronald C. Lassiter, B. J. Mackin, Michael R. Naess, Eugene F. Shiels, Robert B. Wall and Zapata Corporation, Defendants.**

**77 Civil 3180.**

United States District Court, S. D. New York.

Aug. 30, 1979.

Garwin & Bronzaft, New York City, for plaintiff; Sidney L. Garwin, New York City, of counsel.

Rogers & Wells, New York City, for defendants other than Zapata Corp.; William R. Glendon, Guy C. Quinlan, New York City, of counsel.

George A. Burrell, New York City, for defendant Zapata Corp.

## OPINION

EDWARD WEINFELD, District Judge.

The instant motions, one by the individual defendants to strike the jury demand in plaintiff's Amended and Supplemental Complaint (the "amended complaint") and one by the corporate defendant, Zapata Corporation ("Zapata") to strike pretrial discovery and production notices, are sequels to this Court's opinion dismissing plaintiff's original complaint,[1] and the decision of the Court of Appeals affirming in part and reversing in part that decision.[2]

The facts and allegations underlying this action are fully set out in those earlier opinions and need not be repeated. Plaintiff originally asserted claims under sections 10(b), 14(a) and 7 of the Securities Exchange Act (and the rules promulgated thereunder) as well as common law claims, all in connection with the modification in 1974 of Zapata's stock option plan by its board of directors. This Court dismissed the entire complaint for failure to state a cause of action. The Court of Appeals af-

---

1. *Maldonado v. Flynn*, 448 F.Supp. 1032 (S.D. N.Y.1978).

2. *Maldonado v. Flynn*, 597 F.2d 789 (2d Cir. 1979).

firmed as to the section 10(b) claims and also as to the section 14 claims to the extent they were predicated upon a failure to disclose the necessity of obtaining shareholder approval of the modification.[3] However, plaintiff's allegations that the proxy materials used to solicit votes for directors in 1975, 1976 and 1977 were false and misleading in not disclosing the circumstances surrounding the modification were found by the Court of Appeals to state a cause of action. The case was remanded to this Court for further proceedings consistent with that holding.[4]

The plaintiff's amended complaint, again reciting the circumstances of the option plan modification, alleges only a single cause of action for the violations of section 14 pleaded in the original complaint with respect to the 1975 through 1977 elections, and in addition alleges violations in proxy statements issued by Zapata in late 1977 and in 1978 for the election of directors.

The amended complaint seeks a declaration that the elections of directors from 1975–1979 be nullified; an injunction against further misleading proxy statements; and "that the individual defendants be required to account to Zapata for their profits and Zapata's damages." A demand for trial by jury is endorsed upon the amended complaint. The instant motion seeks to strike this demand.

Defendants ground their motion to strike the jury demand upon the argument that any damage claim has been precluded by the Court of Appeals; that the only remaining claim on remand is "the purely equitable claim that the election . . . 'should be nullified.'" This argument clearly reads too much into the Court of Appeals' opinion. The Court of Appeals held only that plaintiff had successfully stated a claim for proxy rule violations. The remand was for "further proceedings consistent [with that holding] including a determination of whether the election of Zapata's directors should be nullified." While there can be no doubt that the essential purpose of the remand was the issue of nullification, the use of the word "including" obviously did not limit relief to that equitable remedy. Nothing in the Court of Appeals opinion suggests that plaintiff is barred from seeking any type of relief properly available to a plaintiff in a successful section 14 claim.

It remains to be determined, however, whether plaintiff's claim to monetary relief sought under the amended complaint encompasses such "damages" as to entitle him to a jury trial.[5] Damages, by way of accounting or restitution, may be awarded in appropriate instances where violations of the proxy rules have caused pecuniary loss.[6] In the cases establishing this rule, however, the misleading proxy statements were issued in connection with a corporate transaction in which the misled shareholders (or their corporation) were alleged to have received a less favorable deal than might have been if disclosure had been made and to have been damaged thereby.

The case at bar differs significantly from these cases in that the transactions with respect to which the proxies were solicited and the false disclosures made were annual elections of directors, not financial "deals" in which a shareholder is cashing in his investment or changing its essential character, as in the case of a merger or exchange

---

**3.** The dismissal of the § 7 claim was not appealed.

**4.** 597 F.2d at 798. The Court of Appeals left for this Court the determination as to jurisdiction over the pendent common law claims. As these have been omitted from the amended complaint, no further discussion of them is required.

**5.** Clearly, plaintiff would not be entitled to a jury trial in a suit seeking only the purely equitable remedies of injunction and nullification of elections.

**6.** See, e. g., Mills v. Electric Auto-Lite Co., 396 U.S. 375, 386–89, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); Dasho v. Susquehanna Corp., 461 F.2d 11, 28 (7th Cir.) (Stevens, J.), cert. denied, 408 U.S. 925, 92 S.Ct. 2496, 33 L.Ed.2d 336 (1972).

offer. It is not that elections are any less important corporate events than mergers, but that pecuniary damages do not, as a matter of course, flow from an improper election.

■ The typical remedy for elections of directors obtained by misleading proxy statements is equitable relief setting aside the tainted election. This was expressly recognized, for example, by the Sixth Circuit in *Ohio Drill & Tool Co. v. Johnson.*[7] There nullification was not available because the corporation was no longer in existence. It was urged upon the Court that disgorgement of profits from the transactions undisclosed by the proxy statement would be an appropriate substitute remedy. The Court of Appeals disagreed even though the normal equitable relief was unavailable. "If a court is to look beyond the ordinary remedy in these cases the . . . out-of-pocket losses standard seems broad enough 'to provide such remedies as are necessary to make effective the congressional purpose.'"[8] This Court agrees with the standard applied by the District Court in *Ohio Drill* and approved by the Court of Appeals. If any damages are warranted in an improper election case, they are limited to out-of-pocket losses attributable to the improper election.

It must now be determined whether the damages claimed by plaintiff meet the standard set forth above. While the specifics of the damages claimed in the amended complaint are not pleaded therein, they are indicated in Plaintiff's Affidavit in Opposition to the Motion. Plaintiff seeks to recover (1) the expenses of preparing and mailing the allegedly defective proxy statements; (2) the expense of a new proxy solicitation if the Court should order one; (3) the directors' fees and expenses paid to the defendant-directors; and (4) compensation paid to the defendant-director-officers.[9] Although not pleaded in the amended complaint, the Court assumes, in the consideration of this motion, that these allegations are contained therein.

■ Of these items, only the expense of a new solicitation, strictly speaking, may be said to represent out-of-pocket losses attributable to the false proxy statements.[10] The expense of the challenged solicitations and elections would have been incurred in any event as part of the corporation's annual election process. The same may be said of the fees and compensation payable to directors. A corporation functions through its directors. Such compensation is an ordinary expense of a corporation payable to those who direct its affairs. Even had the directors, whose acts are under challenge, not been elected, others would have been functioning and fees would have been payable to them.

With the limited nature of the monetary relief available in a section 14 action involving the election of directors thus firmly in mind, plaintiff's right to a jury trial in this action because of his claim for such relief can be considered. The sole authority offered by plaintiff for his contention that a section 14 action is properly triable to a

7. 498 F.2d 186, 192–93 (6th Cir. 1974).

8. *Id.* at 193 (quoting *J. I. Case Co. v. Borak, supra,* 377 U.S. at 433, 84 S.Ct. 1555).

9. In connection with this last item, (4), plaintiff states that it will seek to invalidate certain transactions between Zapata and the individual defendants during their tenure as directors and officers, alleged to be unfair to Zapata. These transactions apparently involve bonuses, employment contracts and payments to a law firm of which one defendant was a member. While these claims are not alleged in the amended complaint (nor is relief for them sought), such claims are wholly unrelated to the alleged

proxy violations and patently constitute, to borrow the language of the Court of Appeals in its opinion in this case, "another attempt to use § 14(a) . . . as an avenue for access to the federal courts in order to redress alleged mismanagement or breach of fiduciary duty on the part of corporate executives." 597 F.2d at 796.

10. It is to be noted that even the second item of damages—the expense of holding a new election with a new solicitation—is only a potential expense. Whether or not it will accrue depends on whether the plaintiff prevails and a new election is ordered.

jury is *Dasho v. Susquehanna Corp.*[11] The Court's own research has discovered no other case on point and the rule relied upon by the plaintiff is by no means clearly established law.[12] The cases cited to this Court and discovered by its own research in which damages were said to be recoverable in section 14 actions were, for that matter, all equitable actions; cases, in fact, in which the power of the court in equity to direct restitution in proper cases was specifically noted.[13]

■ Even if it were conceded that each item of damage listed in plaintiff's affidavit (even though not pleaded) was recoverable, the claims do not entitle plaintiff to a jury trial. Each claim, whether for printing and mailing expenses or recapture of compensation and expenses paid to directors, basically seeks restitution for the benefit of the corporation. Despite plaintiff's reiterated assertion that the claims are to recover "money damages," they are essentially equitable in nature. The fact that recovery of "money damages" is sought does not change the basic nature of the claims. As our Court of Appeals has recently stated, "not all money claims are triable to a jury. A historic equitable remedy was the grant of restitution 'by which defendant is made to disgorge ill-gotten gains or to restore the status quo, or to accomplish both objectives.' "[14]

In the event plaintiff prevails, it is clear that to the extent it is established that the corporation was damaged, restitution would be the remedy. Accordingly, defendants'

motion to strike the jury demand in plaintiff's amended complaint is granted.

The second motion before the Court is Zapata's, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, for an order striking plaintiff's Notice to take the Deposition of Defendant Zapata Corporation and for the production of documents. The plaintiff's recovery demands seek information relating to the "damages" sought under the amended complaint. The matters as to which discovery is sought are as follows: (1) expenses incurred in the preparation and solicitation of annual meeting proxy statements for the years 1975–1979; (2) fees, benefits and expenses paid to Zapata directors for the same period; (3) contracts and agreements between Zapata and each defendant-director for the same period; (4) compensation paid and the manner of its determination for each defendant-director-officer for the same period; and (5) legal fees and expenses paid to the law firm of Baker & Botts for the same period.

■ In light of the foregoing discussion of the nature of damages recoverable in a section 14 action involving a proxy solicitation for the election of directors, it is apparent that plaintiff's efforts to delve into these areas are premature. In the event restitution is shown to be warranted, an appropriate discovery may be had and with dispatch to determine the amounts to be restored to the corporation. Accordingly, the defendant, Zapata Corporation's motion is granted.

---

11. 461 F.2d 11 (7th Cir.) (Stevens, J.), *cert. denied,* 408 U.S. 925, 92 S.Ct. 2496, 33 L.Ed.2d 336 (1972).

12. Indeed, a careful reading of the *Dasho* opinion reveals that, as to the proxy claim involved, the Court of Appeals held only that a "triable issue of fact" existed. It is not altogether clear that a definitive holding was made that a § 14(a) claim entitled one to a jury trial. 461 F.2d at 28–29.

13. *See Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *J. I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); *Gould v. American Hawaiian Steamship Co.,* 362 F.Supp. 771 (D.Del.

1973), *vacated on other grounds,* 535 F.2d 761 (3d Cir. 1976).

14. *SEC v. Commonwealth Chemical Securities, Inc.,* 574 F.2d 90, 95 (2d Cir. 1978). The fact that the action in that case was an SEC enforcement action was considered by the Court of Appeals but was not a factor essential to its holding which turned simply on recognizing the relief sought as restitutionary in nature and on the finding that restitution was an equitable remedy. *Cf. SEC v. Petrofunds, Inc.,* 420 F.Supp. 958 (S.D.N.Y.1976) (in which this Court reached the same conclusion but relied more heavily in its reasoning upon the public function of the SEC).

Finally, defendants move to stay this action pending the outcome of an action between the same parties now before the Chancellor in Delaware.[15] The Delaware action arises out of the stock option plan modification which was the subject matter of the misstatements leading to this action. The Delaware action, however, appears to be a state law action for corporate waste and breach of fiduciary duty.

In light of this Court's view, set forth above, as to the relatively narrow scope of the appropriate subject matter of a section 14 claim, the issues in the Delaware and this action are not sufficiently similar to warrant a stay pending the outcome of the Delaware action. Accordingly, the motion for a stay is denied.[16]

So ordered.

**15.** See *Klein v. Walston & Co.*, 432 F.2d 936 (2d Cir. 1970); *Bethlehem Steel Corp. v. Tishman Realty & Const. Co.*, 72 F.R.D. 33, 40 (S.D.N.Y. 1976) (Pollack, J.).

**16.** See *Kistler Instrumente A. G. v. PCB Piezotronics, Inc.*, 419 F.Supp. 120, 123 (W.D.N.Y. 1976); *Seigal v. Merrick*, 422 F.Supp. 1213, 1220 (S.D.N.Y.1976).