Irving L. **GARTENBERG**, Plaintiff,

v.

**MERRILL LYNCH ASSET MANAGEMENT, INC., Merrill Lynch, Pierce, Fenner & Smith, Incorporated, and Merrill Lynch Ready Assets Trust, Defendants.**

No. 79 CIV. 3123(MP).

United States District Court, S. D. New York.

March 18, 1980.

Pomerantz, Levy, Haudek & Block, New York City, for plaintiff, by Abraham L. Pomerantz, William E. Haudek and Richard M. Meyer, New York City.

Rogers & Wells, New York City, for defendants Merrill Lynch Asset Management, Inc., and Merrill Lynch, Pierce, Fenner & Smith, by William P. Rogers, Stanley Godofsky, James N. Benedict and Andrew M. Low, New York City.

Brown, Wood, Ivey, Mitchell & Petty, New York City, for defendant Merrill Lynch Ready Assets Trust, by James K. Manning and A. Robert Pietrzak, New York City.

## OPINION

MILTON POLLACK, District Judge.

This is a derivative action by a shareholder of a money-market mutual fund, brought pursuant to § 36(b) of the Investment Company Act, 15 U.S.C. § 80a–35(b). Plaintiff has demanded a trial by jury as a matter of constitutional right. Plaintiff claims that the Fund's investment adviser, defendant Merrill Lynch Asset Management, Inc., breached the fiduciary duty it is deemed to have under § 36(b) by receiving excessive and unreasonable compensation under its contract with the Fund and consequently must respond in damages to the Fund. Plaintiff avers that it neither accepts nor attacks the contract pursuant to which the adviser was paid the stipulated compensation.

Defendants have moved to strike plaintiff's demand for a jury trial on the grounds that: (1) § 36(b) provides for an equitable action to be administered on equitable standards and is not triable by jury, and (2) the relief sought herein for alleged breach of fiduciary duty (accounting, restitution) is obtainable only in an equitable action. Plaintiff, on the other hand, contends that the language and intrinsic substance of § 36(b) demonstrate that the claim here is analogous to one traditionally enforced at common law, and therefore, is triable by a jury.

■ The controlling question for determining whether the right to a jury trial exists in this case is whether "the action involves rights and remedies of the sort traditionally enforced at law, rather than in an action in equity or admiralty." *Pernell v. Southall Realty*, 416 U.S. 363, 375, 94 S.Ct. 1723, 1728, 40 L.Ed.2d 198 (1974). Where, as here, a plaintiff brings a derivative suit on behalf of a corporation, the right to a jury trial depends on whether the underlying claim is analogous to a claim enforceable at common law. *Ross v. Bernhard*, 396 U.S. 531, 538–39, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970).[1]

For the reasons that appear hereafter, the motion to strike the jury demand herein will be granted.

### I.

The Seventh Amendment was adopted in 1791 and the guarantee therein of a jury trial was linked with the common law of England as it existed in 1791. *Parsons v. Bedford*, 3 Pet. 433, 446–47, 7 L.Ed. 732 (1830); *Galloway v. United States*, 319 U.S. 372, 390–92, 63 S.Ct. 1077, 1087–88, 87 L.Ed. 1458 (1943). Under English practice, separate courts administered cases at law and suits in equity. The former were triable to juries and the latter were heard at Bench trials by the chancellor.

After 1791, whenever Congress created a claim for relief, unless otherwise intended by Congress the American Courts assigned to the trial thereof, if possible, the incidents applicable to the closest historical analogue in pre-1791 cases. The statutory creation received the constitutional guarantee of a jury trial if the corresponding historical analogue was assertable at common law. Whether the claim was analogous to one administered at common law or in equity was not always readily perceptible or capable of application. *Whitehead v. Shattuck*, 138 U.S. 146, 151, 11 S.Ct. 276, 277, 34 L.Ed. 873 (1891).

In 1938, law and equity in the federal courts were merged and one form of action to be known as "civil action" was established by Rule 2 of the Federal Rules of Civil Procedure. However, it was not intended thereby to extend the Seventh Amendment guarantee of a jury trial to all civil cases; this remained available only in suits of common law character. Where a congressional statute created the right to be administered, the Rules did not modify the existence or absence of the right to a jury trial; and the Rules would not negate a demonstrable congressional purpose that a statutory claim should be administered at a Bench trial under equitable standards in an equitable action.[2] The Rules were adopted to govern the procedure in the federal district courts in all suits of a civil nature whether cognizable as cases at law or in equity or in admiralty, except as set forth in Rule 81 which is inapplicable here. Thus, the application of the Seventh Amendment to statutory causes of action turns on the nature of the action which Congress contemplated therefor.

■ The Congress unquestionably has the power to entrust enforcement of statutory rights to an equitable action to be administered on equitable standards free from the strictures of the Seventh Amendment. *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48–49, 57 S.Ct. 615, 629, 81 L.Ed. 893 (1937) and *Katchen v. Landy*, 382 U.S. 323, 339, 86 S.Ct. 467, 478, 15 L.Ed.2d 391 (1966), *Brotherhood of Railroad Trainmen v. Louisville and National Railroad Company*, 211 F.Supp. 308, 310 (N.D. Ala.1962), *aff'd* 334 F.2d 79 (5th Cir.), *cert. denied*, 379 U.S. 934, 85 S.Ct. 328, 13 L.Ed.2d 345 (1964). These cases are to be contrasted with a case for which Congress

---

1. The Seventh Amendment to the Constitution guarantees the right to jury trial only in "Suits at common law." U.S.Const. Amend. VII. The Seventh Amendment has no application to cases in equity or admiralty. *See Ross v. Bernhard*, 396 U.S. 531, 533, 90 S.Ct. 733, 735, 24 L.Ed.2d 729 (1970).

2. See, generally for historical documentation, Jury Trials In Complex Litigation, 53 St. John's Law Rev. 751 (1979).

has contemplated enforcement of statutory rights in an ordinary civil action in the district courts, where there is no functional justification for denying the jury trial right. *Curtis v. Loether*, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974).

In *Curtis*, the Supreme Court significantly noted that every claim for or award of monetary relief is not necessarily legal in nature. *Id.* pp. 196–97, 94 S.Ct. p. 1009. The Court pointed out that Title VII of the Civil Rights Act, might not provide a jury trial in an action for reinstatement and back pay, since the monetary relief of back pay could be regarded as a form of restitution, a traditional equitable remedy. On the other hand, the monetary relief under Title VIII in *Curtis* was viewed as claimed in an ordinary civil action for damages.

The congressional power to entrust enforcement of newly created statutory rights free from the strictures of the Seventh Amendment is also illustrated where Congress creates new statutory "public rights". Congress

> may assign their adjudication to an administrative agency with which a jury trial would be incompatible, without violating the Seventh Amendment's injunction that jury trial is to be "preserved" in "suits at common law". *Atlas Roofing Co. v. OSHA*, 430 U.S. 442, 455, 97 S.Ct. 1261, 1269, 51 L.Ed.2d 464 (1977).

■ In a derivative stockholder's suit, the plaintiff asserts a claim belonging to his corporation. He is permitted, as an equitable concept, to enforce the corporate claim where the directors cannot or will not do so. The recovery in such a suit normally belongs to the corporation. Thus derivative suits sound in equity, but only to enable the stockholder to assert the corporation's claim. *Ross v. Bernhard, cit. supra*, rules that if such a claim, asserted directly by the corporation, would be cognizable in an action at common law, the aid of equitable principles to enable the stockholder to sue thereon nonetheless left the claim in the posture of one cognizable at common law and subject to jury trial; the right to jury trial was not dependent upon the vehicle enabling the plaintiff to sue. 398 U.S. at 538 & n.10, 542, 90 S.Ct. at 738 n.10, 740.

A claim pursuant to § 36(b) of the Investment Company Act, 15 U.S.C. § 80a–35(b), may be asserted either by the Securities and Exchange Commission (SEC) or by a stockholder of the Fund on its behalf. Such a suit was of course not cognizable at common law, but this alone is not, as noted above, dispositive of the jury question. It still is necessary to examine the purpose and intent of Congress in respect to whether the claim is to be administered as one at common law or in an equitable action that was not triable to a jury prior to 1791.

## II.

Section 36(b) of the Investment Company Act, 15 U.S.C. § 80a–35(b), provides in pertinent part:

> (b) For the purposes of this subsection, the investment adviser of a registered company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser. An action may be brought under this subsection by the Commission, or by a security holder of such registered investment company on behalf of such company, against such investment adviser, or any affiliated person of such investment adviser, or any person enumerated in subsection (a) of this section who has a fiduciary duty concerning such compensation or payments, for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person. With respect to any such action the following provisions shall apply:
>
> \* \* \* \* \* \*
>
> (3) No such action shall be brought or maintained against any person other than the recipient of such compensation or

payments, and no damages or other relief shall be granted against any person other than the recipient of such compensation or payments. No award of damages shall be recoverable for any period prior to one year before the action was instituted. Any award of damages against such recipient shall be limited to the actual damages resulting from the breach of fiduciary duty and shall in no event exceed the amount of compensation or payments received from such investment company, or the security holders thereof, by such recipient.

In support of his contention that the suit here involved is of a kind that could have been brought at common law, the plaintiff analyzes the language, intrinsic substance and legislative history of § 36(b) as follows. Plaintiff points out that in the restrictions on such litigation and the relief to be accorded, the word "damages" is mentioned four times. Section 36(b)(3). He argues that a straight "damage" claim is one at law and ordinarily triable to a jury under the Seventh Amendment, citing *Pernell v. Southall*, 416 U.S. 363, 370, 94 S.Ct. 1723, 1727, 40 L.Ed.2d 198 (1974). He argues further that the intention was to create a claim at law because § 36(b)(3) limits the recovery to actual damages thereby excluding punitive damages which are not recoverable. He puts the query, "If the claim is not one for damages then what is it for?" He responds to his question that it is not one for restitution because unjust enrichment or restitution is not co-extensive with and may be greater or less than actual damages and restitution therefore is not the contemplated recovery under the statutory claim; that unjust enrichment as a measure of recovery is foreclosed by the statute because it prescribes that the recovery shall in no event exceed the amount of the compensation received.

Plaintiff's analysis does not survive a careful examination of the legislative history which shows that Congress went to great pains to emphasize that it was creating an equitable action to be administered on equitable standards. The plaintiff argues, however, that the legislative history of § 36(b) is inconclusive; that although the Senate Report announces that the right created is to be enforceable in an "equitable action", this description was used in deference to the age old understanding that all derivative stockholder suits were equitable actions because they were derivative. This argument is self-defeating; it amounts to no more than saying that the Senate contemplated that it was creating an equitable action.

Plaintiff contends that the ruling in *Ross v. Bernhard*, handed down on February 2, 1970, after the publication of the Senate Report of May 21, 1969, knocked out the underpinnings for the Senate's use of the term "equitable action". As we shall see, the difficulty with this argument is that the Senate and the House of Representatives considered the proposed legislation for many months after *Ross v. Bernhard* was announced and the Congress reiterated that the claim was to be judged on equitable standards in an equitable action, not an action at law on legal rules. In other words, having started out to create a right triable in an equitable action, Congress persisted in that purpose even after *Ross v. Bernhard*.

### III.

■ 1. *Legislative History*—Section 36(b) was added to the Investment Company Act in 1970. The Senate Report (Bankruptcy and Currency Committee) No. 91–184 was dated May 21, 1969 to accompany S. 2224,[3] U.S.Code Cong. & Admin.News 1970, p. 4897. The House Report (Interstate and Foreign Commerce Committee) No. 91–1382 was dated August 7, 1970 to accompany H.R. 17333, the companion bill. The Conference Report No. 91–1631, was dated November 25, 1970 to accompany S.

---

**3.** S. 2224 introduced "A bill to amend the Investment Company Act of 1940 and the Investment Advisers Act of 1940 to define the equitable standards governing relationships between investment companies and their investment advisers and principle underwriters, and for other purposes".

2224, U.S.Code Cong. & Admin.News 1970, p. 4897. The legislation was considered in the Senate on May 26, 1969 and passed on November 30, 1970; and was considered in the House on September 23, 1970 and passed on December 1, 1970. The Senate bill was passed in lieu of the House bill.

The Senate Report reviewed the mechanism by which the fairness of advisory compensation under management contracts could be tested in court prior to the introduction of the new § 36(b) proposed to be enacted:

> Under general rules of law, advisory contracts which are ratified by the shareholders, or in some States approved by a vote of the disinterested directors, may not be upset in the courts except upon a showing of "corporate waste." As one court put it, the fee must "Shock the conscience of the court." Such a rule may not be an improper one when the protections of arm's length bargaining are present. But in the mutual fund industry where these marketplace forces are not likely to operate as effectively, your committee has decided that the standard of "corporate waste" is unduly restrictive and recommends that it be changed. (p. 5, U.S.Code Cong. & Admin. News 1970, p. 4901.)

The Senate Report then stated the reason for addition of the new § 36(b):

> Your committee believes that the investment adviser should be a fiduciary of the fund in such matters as the handling of the fund's assets and investments. Therefore, we have added a new section 36(b) to the Investment Company Act to specify that the adviser has a fiduciary duty with respect to compensation for services or other payments paid by the fund or its shareholders to the adviser or to affiliated persons of the adviser. (p. 6)

> \*    \*    \*    \*    \*    \*

> This section is not intended to authorize a court to substitute its business judgment for that of the mutual fund's

board of directors in the area of management fees. It does, however, authorize the court to determine whether the investment adviser has committed a breach of fiduciary duty in determining or receiving the fee. (p. 6, U.S.Code Cong. & Admin.News 1970, p. 4902.)

In its "Explanation and Analysis of the Bill," the Senate Report stated that:

> In the event that court action is brought to enforce this fiduciary duty of the investment adviser as to compensation or payments received by him, it is intended that the court look at all the facts in connection with the determination and receipt of such compensation, including all services rendered to the fund or its shareholders and all compensation and payments received, in order to reach a decision as to whether the adviser has properly acted as a fiduciary in relation to such compensation. (p. 15)

> \*    \*    \*    \*    \*    \*

> Thus, upon a challenge in court to compensation or payments, the ultimate test, even if the compensation or payments are approved by the directors and stockholders, will not be whether it involves a "waste" of corporate assets but will be whether the investment adviser has fulfilled his fiduciary duty to the mutual fund shareholders in determining the fee.

> Section 36(b) authorizes the Commission and also a shareholder acting on behalf of the fund to institute *an equitable action* involving a claim of fiduciary duty. The section makes it explicit that the Commission or any other plaintiff has the burden of proving to the satisfaction of the court that the defendant has committed a breach of fiduciary duty. (Emphasis supplied) (pp. 15–16)[4]

The companion House bill (H.R. 17333) was introduced on April 29, 1970 and was reported on August 7, 1970. Again, as in the Senate Report, the new action created by § 36(b) was described in the House Report as follows:

---

4. S.Rep. No. 91–184, 91st Cong., 1st Sess. (1969), *reprinted in* [1970] U.S.Code Cong. & Admin.News, 91st Cong., 1st Sess. at 4910–11.

Section 36(b) authorized the Commission and also a shareholder acting on behalf of the fund to institute an *equitable action* involving a claim of breach of fiduciary duty. (Emphasis supplied) (p. 38)

\* \* \* \* \* \*

Although section 36(b) provides for an *equitable action* for breach of fiduciary duty as does section 36(a), the fact that subsection (b) specifically provides for a private right of action should not be read by implication to affect subsection (a). (Emphasis supplied) (p. 38)[5]

Finally, the Conference Report dated November 25, 1970, makes abundantly clear that Congress intended to prescribe equitable standards and an equitable action for § 36(b). The report reads (in part):

The managers on the part of the House at the conference on the disagreeing votes of the two Houses on the amendment of the House to the bill (S. 2224) to amend the Investment Company Act of 1940 and the Investment Advisers Act of 1940 to define *the equitable standards* governing relationships between investment companies and their investment advisers and principal underwriters, and for other purposes, submit the following statement in explanation of the effect of the *action agreed* upon by the conferees and recommended in the accompanying conference report: (Emphasis supplied) (p. 4943)

\* \* \* \* \* \*

The conference agreement *follows the Senate version* by requiring in an *action* under section 36(b) that the plaintiff be a security holder of the investment company and that he bear the burden of proof. (p. 4947)[6] (Emphasis supplied).

The reference to "equitable standards" made chronologically after the decision in *Ross v. Bernhard* completely refutes plain-

tiff's contention that Congress merely considered the action equitable because derivative. The Supreme Court has recognized that Congress is aware of the significance of the terms "legal" and "equitable" with respect to the right to a jury trial. *Lorillard v. Pons*, 434 U.S. 575, 583, 585, 98 S.Ct. 866, 871, 872, 55 L.Ed.2d 40 (1978). There can be no question about Congress' intent here.

2. *Breaches of fiduciary duty involve equitable rights*—A functional analysis of the statute makes it clear that actions under it must be considered equitable. Historically, actions based on breaches of fiduciary duty have sounded in equity. *Atwood v. Pacific Maritime Ass'n*, 432 F.Supp. 491, 497 (D.Ore.1977) ("[A]n action for breach of duty of fair representation is analogous to a suit in equity for breach of fiduciary duty, as to which no constitutional right to trial by jury attaches."); Restatement of Restitution, Introductory Note at 9 (1937) ("[E]quity still retains jurisdiction over nearly all situations involving a breach of fiduciary duty."); *Note*, 65 Harvard Law Review 453, 462, 466 (1952) ("It would seem better . . . for fiduciary relationships to be always adjusted by the court, as they usually were before merger."). *Cf. Schine v. Schine*, 367 F.2d 685, 687 (2d Cir. 1966) ("Plaintiffs' fourth claim, for an accounting based on defendants' alleged breaches of their fiduciary duty as officers, directors, and majority stockholders, would have been cognizable in equity before the merger of law and equity.").

Plaintiff maintains that this fact is without significance, however, because in a number of cases (notably, *Ross v. Bernhard*) courts have held that where an action for breach of fiduciary duty is predicated upon underlying conduct, such as negligence, which is actionable at common law, a right to trial by jury exists. Plaintiff's

---

**5.** H.R.Rep. No. 91–1382, 91st Cong., 2d Sess. (1970). Another hurdle which confronts plaintiff is that both Houses of Congress treat the Commission's action and the stockholders' action in *pari materia*. It is well settled that there is no right to a jury trial in actions brought by the Commission.

**6.** H.R.Conf.Rep. No. 91–1631, 91st Cong., 2d Sess. (1970), *reprinted in* [1970] U.S.Code Cong. & Admin.News, pp. 4943–4948.

reliance is misplaced, however, insofar as those cases merely recognize that where both legal and equitable claims are present, the right to a jury trial is preserved.

Thus, in *Ross v. Bernhard*, the Court implicitly acknowledged that, standing alone, an allegation of breach of fiduciary duty would sound in equity:

> There are allegations in the complaint of a breach of fiduciary duty, but there are also allegations of ordinary breach of contract and gross negligence. The corporation, had it sued on its own behalf, would have been entitled to a jury's determination, at a minimum, of its damages against its broker under the brokerage contract and of its rights against its own directors because of their negligence. Under these circumstances, it is unnecessary to decide whether the corporation's other claims are also properly triable to a jury. (396 U.S. at 542–43, 90 S.Ct. at 740)

The only claim in this case is for breach of fiduciary duty by receiving contractual compensation that, on equitable standards, is excessive for investment advice and the relief demanded is an accounting to the Trust and monetary repayment. There is no underlying "legal" claim for ordinary breach of contract or negligence, or any other.

**3.** *The remedies involved are equitable in nature*—In the complaint, plaintiff prays for judgment

> 1. Requiring the Adviser and Merrill Lynch to account to the Trust for all excessive advisory fees paid to the Adviser by the Trust and to repay such fees to the Trust . . .

Plaintiff does not dispute that the prayer for an accounting is a request for equitable relief, but argues that "the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleading." *Dairy Queen v. Wood*, 369 U.S. 469, 477–79, 82 S.Ct. 894, 899–90, 8 L.Ed.2d 44 (1962).

Rather, plaintiff argues, by the terms of the statute, the only remedy available thereunder is repayment of "damages", which, he believes, necessarily invokes a legal remedy. Defendants, on the other hand, argue that, notwithstanding that the repayment is termed "damages", the remedy provided for under § 36(b) and being sought in this case is, in substance, restitution, which is an equitable remedy.

Far from being conclusive, the presence of the word "damages" merely launches the inquiry into the legislative intent behind the wording of § 36(b). While it is true that § 36(b) speaks of an "award of damages", it seems likely from the context that Congress was using "damages" merely as a shorthand for "recovery of money", not as a legal term of art. Since, as noted above, not all claims for monetary relief are legal in nature, the use of the term "damages" is not persuasive in this instance. In particular, given the repeated statement in the legislative history that actions under § 36(b) are equitable, to be administered on equitable standards, it would seem impossible to conclude from the use of the word "damages" that Congress thereby provided for a trial by jury.

Moreover, regardless of the nomenclature used in the statute or the prayer for relief, plaintiff states in his brief that "repayment of the excessive fees would wipe out [i. e., are equivalent to] the damages to the fund in this case." In effect, this concedes that the remedy sought by plaintiff is in substance and reality restitution.

Plaintiff argues, however, that restitution is not an exclusively equitable remedy, even assuming that it is the remedy being sought in this case and provided for by the statute. While this may be true as an abstract proposition, it has no bearing on this case, because, as defendants point out, in circumstances such as those presented here, restitution has been held to be an equitable remedy.

Thus, in *SEC v. Commonwealth Chemical Securities, Inc.*, 574 F.2d 90, 95 (2d Cir. 1978), where the SEC sought disgorgement of profits on the basis of alleged violations of the federal securities laws, the Second Circuit stated:

[N]ot all money claims are triable to a jury. A historic equitable remedy was the grant of restitution "by which defendant is made to disgorge ill-gotten gains or to restore the status quo, or to accomplish both objectives." [Cites omitted.] And "[w]hen restitution is sought in the form and in the situations allowed in equity prior to the rules or authorized by valid statutes there is no right to jury trial." 5 *Moore, supra,* ¶ 38.24 at 190.6.

Plaintiff seeks to distinguish this case on the ground that it involved an action brought by the SEC. This contention, however, was recently addressed and discarded by Judge Weinfeld in *Maldonado v. Flynn,* 477 F.Supp. 1007 (S.D.N.Y.1979), in which he stated:

> The fact that the action in that case [*SEC v. Commonwealth Chemical Securities, Inc., supra*] was an SEC enforcement action was considered by the Court of Appeals but was not a factor essential to its holding which turned simply on recognizing the relief sought as restitutionary in nature and on the finding that restitution was an equitable remedy. . . .
> 477 F.Supp. at 1011 n.14.

In *Maldonado,* Judge Weinfeld struck a plaintiff's demand for a jury trial in a stockholder's derivative suit alleging violations of the securities laws. One of the claims was for repayment to the corporation of compensation paid to directors. In language applicable to the case at hand, Judge Weinfeld said:

> Each claim, whether for printing and mailing expenses or recapture of compensation and expenses paid to directors, basically seeks restitution for the benefit of the corporation. Despite plaintiff's reiterated assertion that the claims are to recover "money damages," they are essentially equitable in nature. The fact that recovery of "money damages" is sought does not change the basic nature of the claims.

> \*    \*    \*    \*    \*    \*

> In the event plaintiff prevails, it is clear that to the extent it is established that the corporation was damaged, resti-

tution would be the remedy. Accordingly, defendants' motion to strike the jury demand in plaintiff's amended complaint is granted.

*Id.* at 1011.

The Fifth Circuit, in a patent infringement suit has also rejected the notion that any and all actions for "damages" are triable to a jury.

> [W]e reject a view that the trio of Beacon Theatres, Dairy Queen, and Thermo-Stitch is a catalyst which suddenly converts *any* money request into a money claim triable by jury. *Swofford v. B & W, Incorporated,* 336 F.2d 406, 414 (5th Cir. 1964), *cert. denied,* 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965).

Defendants also point out that Judge Henry J. Friendly, when testifying before a House subcommittee considering amending the statute to apply a "reasonableness" standard to the amount of advisory fees paid by a mutual fund, stated, "[A]ctions to recover unreasonable fees are equitable in nature, [and] would be tried to judges and not to juries." Insofar as the particular bill under consideration was not adopted plaintiff may be right that this is not persuasive legislative history (though defendants have argued persuasively that it is); however, it nonetheless represents the authoritative opinion of an eminent jurist that an action much like the one at hand is equitable in nature, and is worthy of consideration as such. See, Statement of Judge Henry J. Friendly, Hearings before the Subcommittee on Commerce and Finance of the Committee on Interstate and Foreign Commerce, House of Representatives, November 12—December 11, 1969, Serial No. 91–33, at 792.

The plaintiff's counsel asserted at the argument of the motion that plaintiff neither attacks nor accepts the contract between the Fund and its adviser. Seemingly this places the case beyond the pale of an action at common law. A contract exists and the adviser is entitled at law to its enforcement as written. The common law did not undertake to revise contractual arrangements. There is here no claim of

fraud, duress, illegality or non-existence of the contract which, if established, could strike it down, and permit a *quantum meruit* valuation of the services.[7]

In sum, it appears that in the present case, plaintiff is essentially seeking restitution for alleged breach of a fiduciary duty, which is an action that sounds in equity and was created expressly as an equitable claim and not as one triable under common law principles. Accordingly, plaintiff's demand for a jury trial should be and hereby is stricken.

SO ORDERED.

---

**7.** Plaintiff cited *Simler v. Conner*, 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963) as applicable nonetheless; however, that authority is wholly inapposite since the contract being administered was one for *reasonable* fees under a contingent fee retainer stipulating that reasonableness may be set in a court trial. Respondent relied on a *subsequent* contract specifying 50% of the recovery, under certain circumstances, as the amount of the fee. Petitioner countered that the latter contract was the product of fraud and overreaching by the lawyer.