Philip M. STERN, Plaintiff–Appellant,

v.

GENERAL ELECTRIC COMPANY, John F. Welch, Jr., Lawrence A. Bossidy, Edward E. Hood, Jr., Richard T. Baker, James G. Boswell II, Silas C. Cathcart, Charles D. Dickey, Jr., Lawrence E. Fouraker, Henry H. Henley, Jr., Henry L. Hillman, Robert E. Mercer, Gertrude G. Michelson, Barbara Scott Preiskel, Lewis T. Preston, Frank H.T. Rhodes, Andrew C. Sigler, and Walter B. Wriston, Defendants–Appellees.

No. 167, Docket 87–7481.

United States Court of Appeals, Second Circuit.

Argued Oct. 16, 1990.

Decided Jan. 28, 1991.

Whitney North Seymour, Jr., New York City (Craig A. Landy, Peter James Clines, Brown & Seymour, of counsel), for plaintiff-appellant.

Robert B. Fiske, Jr., New York City (Davis Polk & Wardwell, of counsel), for individual defendants-appellees.

Philip A. Lacovara, Fairfield, Conn., for defendant-appellee General Electric Co.

Before OAKES, Chief Judge, PIERCE and WINTER, Circuit Judges.

OAKES, Chief Judge:

Philip M. Stern appeals from a judgment of the United States District Court for the Southern District of New York, Mary Johnson Lowe, Judge, granting the motion of General Electric Company ("GE") and sixteen of its directors (the "Directors") to dismiss Stern's complaint. For the reasons set forth below, we affirm as to Counts Two and Three of the complaint, but reverse as to Counts One and Four and remand with instructions to modify the judgment to allow Stern to replead.

### BACKGROUND

On May 21, 1986, Stern filed a shareholders' derivative action against the Directors, alleging that the Directors had expended substantial sums from the corporation's treasury for the support of the "Non–Partisan Political Support Committee for General Electric Employees" ("GE/PAC"). The gravamen of the complaint is that GE/PAC funds had been used to support congressional incumbents without regard to their past position on business issues, and that this practice was harmful to the interests of GE's shareholders. Counts One and Four of the complaint charge the Directors with breaching their fiduciary obligations to GE by wasting corporate assets. Specifically, Count One alleges that the Directors expended corporate funds to solicit contributions to and administer GE/PAC, despite the fact that GE realized no benefit from GE/PAC's activities, while Count Four charges that the Directors authorized expenditures of corporate funds to support GE/PAC that were excessive in relation to the amount of contributions collected. Counts Two and Three allege that, by supporting the activities of GE/PAC, the Directors breached their fiduciary duties to GE by exposing the company to liability under the Federal Regulation of Lobbying Act ("FRLA"), ch. 753, 60 Stat. 839 (1946) (codified at 2 U.S.C. §§ 261–270), and under the federal anti-bribery statute, Pub.L. No. 87–849, 76 Stat. 1121–22 (1962) (codified at 18 U.S.C. § 203).

In an opinion and order dated May 14, 1987, the district court granted appellees' motion to dismiss Stern's complaint, and Stern promptly moved for reargument. While his motion was pending, Stern filed an administrative complaint with the Federal Election Commission ("FEC"), alleging that GE/PAC's use of funds during the 1986 election cycle violated the Federal Election Campaign Act of 1971 ("FECA"), Pub.L. No. 92–225, 86 Stat. 3 (codified as amended at 2 U.S.C. §§ 431–455). On November 18, 1988, the FEC dismissed the complaint, on the ground that expenditures made by political action committees for the purposes of lobbying are lawful under the FECA. Stern appealed this decision to the United States District Court for the District of Columbia, which affirmed. *See Stern v. FEC*, No. 89–0089, slip op. (D.D.C. Aug. 31, 1989), *aff'd*, 921 F.2d 296 (D.C.Cir. 1990).

On March 26, 1990, Judge Lowe denied Stern's motion for reargument in the

present action. Stern now appeals from that order and from the original order and judgment of May 1987.

## DISCUSSION

### 1. Counts One and Four: Waste of Corporate Assets.

The district court dismissed the allegations of corporate waste in Counts One and Four [1] on the theory that the allegations in those Counts were preempted by the FECA. The court first observed that Stern could not allege violations of the FECA directly because, under 2 U.S.C. § 437c(b)(1), such claims fall within the FEC's exclusive jurisdiction. It then found that, to the extent the complaint alleges state-law theories of liability rather than direct FECA violations, "defendants are insulated by their [compliance with the FECA] from any end run attacks based upon state law." For the reasons set forth below, we believe the district court's analysis of Counts One and Four was mistaken. However, because we conclude that the pleadings in Counts One and Four fail to satisfy the requirements of Fed.R.Civ.P. 9(b), we agree that those Counts should be dismissed. We reverse the judgment as to Counts One and Four, then, only insofar as it denies Stern leave to replead.

■ Before examining the district court's own rationale for dismissing Counts One and Four, we pause to address the argument appellees advance in support of the district court's decision. Their claim is that the allegations in Counts One and Four were properly dismissed because they are "predicated upon" a finding that GE/PAC violated the FECA, and that they therefore fall within the FEC's exclusive jurisdiction to adjudicate FECA cases. This theory, we believe, misconstrues the nature of the allegations in Stern's complaint.

To be sure, the complaint does contend that GE/PAC violated the "explicit intent and purpose" of the FECA. This reference to the FECA, however, was contained in the background to the complaint and not in the substantive counts, and was probably intended only to buttress the allegations that the Directors' support of GE/PAC was wasteful. It in no way indicates that the Directors' liability for waste derives from GE/PAC's alleged violations of the FECA. Rather, Count One of the complaint alleges that the Directors' continued funding of GE/PAC—given that organization's support of politicians who lacked a clear pro-business stance—constituted a waste of corporate assets under *state law*, regardless of whether GE/PAC's activities were themselves permitted under the FECA.[2] Likewise, Count Four alleges that the Directors' expenditures on GE/PAC were excessive in relation to the amount of contributions GE/PAC generated—again, solely as a matter of state law, and regardless of whether GE/PAC's activities were permitted under the FECA. Accordingly, appellees' contention that the complaint falls within the FEC's exclusive jurisdiction is without merit.

■ We turn, then, to the district court's own rationale for dismissing Counts One

---

1. Count One of the complaint alleges that:

   Many, if not most, GE/PAC payments have been indiscriminately turned over for the benefit of incumbent Members of Congress without regard to their position on legislative issues of concern to the corporation. No benefit has been realized by the corporation from these payments, and the expenditure of corporate funds to solicit and administer them has constituted a waste of corporate assets.

   Count Four alleges that:

   On information and belief, the level of expenditures of corporate funds for the administration of, and solicitation of contributions for the GE/PAC have been unreasonable and excessive in relation to the amount of contri-

butions collected, and have constituted an improper use and waste of corporate assets.

2. We note that the theory of liability in Count One is not that the Directors are vicariously responsible for GE/PAC's improper expenditures. Such a theory, we believe, would provide a weak basis for establishing the Directors' breach of fiduciary obligations, as the Directors appear to have little control over the way in which GE/PAC chooses to use its funds. Rather, the theory behind Count One is that the Directors' *own* decision to continue to expend corporate assets on GE/PAC—given that organization's negative effect on the interests of GE's shareholders—constituted a breach of the Directors' fiduciary obligations.

and Four—that the allegations of corporate waste were preempted by the FECA. This holding, we conclude, rests on an overly broad interpretation of the case law concerning the preemptive effect of federal statutes. Certainly, had Congress specifically intended to preempt state regulation of corporate political activity, a finding that the Directors' support of GE/PAC violated state law would interfere with the exclusive federal right to regulate the activities of political action committees and their corporate sponsors. The preemption provision of the FECA, however, relates only to state-law provisions "with respect to election to Federal office." 2 U.S.C. § 453 (1988). The narrow wording of this provision suggests that Congress did not intend to preempt state regulation with respect to non-election-related activities.[3] *Cf. Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 7–8, 107 S.Ct. 2211, 2215, 96 L.Ed.2d 1 (1987) (finding that the preemption clause of the Employee Retirement Income Security Act did not preempt a state statute relating to employee benefits, because the clause was narrowly worded to cover only employee benefit "plans").

Of course, the application of state law under Counts One and Four would be precluded even absent an explicit preemption provision if Congress had occupied the entire field of corporate political spending, leaving no room for supplemental state regulation. *See Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947); *see also Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986) (listing ways in which preemption may occur).

We do not believe, however, that Congress has occupied the field to such an extensive degree. In *Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Comm'n*, 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983), the Supreme Court upheld California's requirement that nuclear power plants establish waste disposal facilities, despite the fact that such facilities were not required under the Atomic Energy Act of 1954, ch. 1073, 68 Stat. 919 (codified as amended at 42 U.S.C. § 2011, *et seq.*). The Court concluded that Congress had occupied the field of nuclear power only with respect to safety-motivated regulation, and that California could impose additional regulations to further its independent interest in ensuring the economic feasibility of new nuclear energy plants. *See id.* at 212–16, 103 S.Ct. at 1726–28. Likewise, in the present case, if Congress has occupied the field of corporate political activity at all, it has done so only to prevent the corruption of the political process. *See FEC v. National Right to Work Comm.*, 459 U.S. 197, 209, 103 S.Ct. 552, 560, 74 L.Ed.2d 364 (1982) (noting that the FECA's provisions relating to corporate political spending were designed "to prevent both actual and apparent corruption"). Such regulation does not preclude New York from pursuing its independent interest in ensuring that corporate directors exercise sound judgment in the expenditure of corporate funds.[4]

State-law regulation of the Directors' support of GE/PAC would also be preempted if such regulation actually conflicted with federal law. *See Hines v. Da-*

---

**3.** Indeed, even with respect to election-related activities, courts have given section 453 a narrow preemptive effect in light of its legislative history. *See Reeder v. Kansas City Bd. of Police Comm'rs*, 733 F.2d 543, 545–46 (8th Cir.1984) (concluding that section 453 did not preempt a state law forbidding police officers from making political contributions to federal campaigns).

**4.** This conclusion is particularly appropriate with respect to Count Four, which alleges that the Directors' funding of GE/PAC was "excessive." Because the FECA is completely silent with respect to the appropriate level of funding for corporate political action committees, a

finding that Congress has occupied the entire field of corporate political spending would result in a total absence of regulation on this important matter of corporate activity. We are unwilling to create such a regulatory vacuum without a clear indication of congressional intent. *See Arkansas Elec. Coop. Corp. v. Arkansas Pub. Serv. Comm'n*, 461 U.S. 375, 384, 103 S.Ct. 1905, 1912, 76 L.Ed.2d 1 (1983) (noting the possibility that Congress intended to leave certain wholesale energy sales unregulated, but refusing to infer such an intent absent an indication from the "language, history, or policy" of the statute at issue).

*vidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). To conflict with federal law, however, state regulation must frustrate the attainment of specific objectives that federal legislation is designed to promote. *See Commonwealth Edison Co. v. Montana,* 453 U.S. 609, 634, 101 S.Ct. 2946, 2962, 69 L.Ed.2d 884 (1981). Here, the fact that state-law notions of waste may prevent a corporation from supporting a political action committee does not establish that the application of state waste law frustrates the FECA's intended objectives. The FECA merely *permits* corporations to "establish[ ], administ[er], and solicit[ ] ... contributions to a separate segregated fund to be utilized for political purposes." 2 U.S.C. § 441b(b)(2)(C) (1988). Rather than reflecting a congressional intent to encourage corporations to support the administrative expenses of political action committees, this provision is part of a statute designed to *limit* corporate political spending in order to preserve the integrity of the political process. *See National Right to Work Comm.,* 459 U.S. at 209–10, 103 S.Ct. at 560–61; *see also FEC v. Massachusetts Citizens for Life, Inc.,* 479 U.S. 238, 246–48, 107 S.Ct. 616, 621–23, 93 L.Ed.2d 539 (1986) (concluding that FECA section 441b was designed to eliminate direct corporate expenditures in connection with elections). Thus, state-law regulations that tend to reduce a corporation's support of its political action committee do not impede the FECA's goals.[5]

Our conclusion that the FECA does not preempt the allegations of corporate waste

in Counts One and Four does not end our analysis, however. As with any complaint, a motion to dismiss must be granted if the pleadings fail adequately to allege the elements of the claim on which the plaintiff's theory of liability is based. For the following reasons, we believe that Stern has failed to plead all the elements required to support his claim of corporate waste, and therefore remand with instructions to dismiss Counts One and Four with leave to replead.

■ Initially, we note that, under the New York business judgment rule, the actions of corporate directors are subject to judicial review only upon a showing of fraud or bad faith. *See Auerbach v. Bennett,* 47 N.Y.2d 619, 629–31, 419 N.Y.S.2d 920, 926–27, 393 N.E.2d 994, 1000 (1979) (requiring evidence of "bad faith or fraud"); *Kalmanash v. Smith,* 291 N.Y. 142, 155, 51 N.E.2d 681, 687 (1943) (requiring evidence of fraud). To survive a motion to dismiss, then, a shareholder derivative complaint must allege that the directors acted fraudulently or in bad faith; allegations of "waste," standing alone, will not be enough. In a federal complaint, moreover, while bad faith "may be averred generally," allegations of fraud must be supported by particular statements indicating the factual circumstances on which the theory of fraud is based. *See* Fed.R.Civ.P. 9(b) (requiring particularity in averments of "fraud or mistake," but not in connection with averments of "[m]alice, intent, knowledge, and other condition[s] of mind").[6]

---

5. Moreover, the fact that state-law waste doctrine may reduce the financial vitality of the political action committees themselves, by lowering the degree of corporate support of the committees' administrative costs, does not establish that the application of state law impedes the FECA's goals. As noted above, the purpose of the FECA is not to encourage political action committees to spend as much as possible, but rather to prevent the corrosive effect on the political process of excessive corporate political activity.

6. Although the requirement that a shareholder derivative plaintiff allege fraud or bad faith is a matter of state law, the Federal Rules of Civil Procedure govern the degree of particularity with which such an allegation must be made in a federal complaint. *See Fleming v. Kane Coun-*

*ty,* 636 F.Supp. 742, 748 (N.D.Ill.1986) (holding that, under Fed.R.Civ.P. 9(b), a libel plaintiff may allege malice generally, even if state law requires an allegation of facts supporting an inference of malice); *Stearn v. MacLean–Hunter, Ltd.,* 46 F.R.D. 76, 79 (S.D.N.Y.1969) ("[E]ven assuming that the jurisdiction whose substantive law is decisive here would require a more particular statement of malice, since there is a federal rule which is explicitly applicable, it is sufficient to state a claim in this Court that malice be alleged generally."). *See generally Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) (suggesting that the Federal Rules of Civil Procedure are procedural rules to which federal courts sitting in diversity must adhere).

We turn first to Stern's allegations of fraud. After carefully scrutinizing the complaint, the only reference to fraud we can find is the following statement in paragraph 25:

> By letter dated April 29, 1986, GE's senior vice president, general counsel and secretary informed plaintiff through counsel that the Board of Directors had considered plaintiff's demand of January 30, 1986 at a regular meeting, and did not feel it was desirable or appropriate to "interfere with the free decisions of the participants in this program." *This response itself demonstrates the deception and fraud with which these activities have been and are still being carried on.* (Emphasis added)

For two reasons, we do not believe this statement satisfies Stern's pleading requirements under the federal rules. First, paragraph 25 is in essence an anticipation of a potential affirmative defense: it predicts that the defendants will rely on the January 30 board meeting as a defense to Stern's allegations of improper activity, and instructs the court to ignore this defense because of the Directors' "deception and fraud." As such, it is not a part of Stern's pleadings at all, and may not be considered in our analysis of the sufficiency of Stern's complaint. *See* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1276 (1990) (noting that a plaintiff's references to anticipated affirmative defenses should be treated "as surplusage"). In addition, even if we were to consider the statements in paragraph 25, those allegations would fail under Fed.R.Civ.P. 9(b) because they are made upon "information and belief" and do not identify with particularity the facts upon which the belief is founded. *See DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987) (providing that, where fraud allegations are made on information and belief, they "must be accompanied by a statement of the facts upon which the belief is based").

Despite Stern's failure to allege fraud with particularity, however, the case could still go forward if the complaint alleged that the Directors' actions were committed in "bad faith." *See Auerbach*, 47 N.Y.2d at 631, 419 N.Y.S.2d at 927, 393 N.E.2d at 1000 (indicating that evidence of "bad faith," in addition to evidence of fraud, is sufficient to satisfy the business judgment rule in a shareholder derivative action). Unlike allegations of fraud, moreover, an allegation of bad faith would not need to be supported by particular factual statements. *See* Fed.R.Civ.P. 9(b). Here, however, the complaint makes *no* allegation of bad faith—not even a generalized one—except perhaps for certain statements related to the illegal lobbying count, which have nothing to do with the waste claims set forth in Counts One and Four. Rather, the allegations in Counts One and Four state only that the Directors' expenditures were "unreasonable and excessive" and that they "constituted an improper use and waste of corporate assets." These statements do not provide a sufficient allegation of the Directors' bad faith to meet the requirements of the business judgment rule.

Because the complaint fails to meet the requirements of Fed.R.Civ.P. 9(b), we agree with the district court that the allegations in Counts One and Four should be dismissed. However, because dismissals for insufficient pleadings are ordinarily with leave to replead, *see Nagler v. Admiral Corp.*, 248 F.2d 319, 322 (2d Cir.1957) (noting that "outright dismissal for reasons not going to the merits is viewed with disfavor in the federal courts"), we reverse the district court's decision to dismiss Counts One and Four insofar as that dismissal was with prejudice,[7] and remand with instructions to dismiss those Counts

---

**7.** Because the district court did not state that the dismissal was without prejudice, we assume that a dismissal with prejudice was intended. *See Carter v. Norfolk Community Hospital Ass'n*, 761 F.2d 970, 974 (4th Cir.1985) ("A district court's dismissal under rule 12(b)(6) is, of course, with prejudice unless it specifically orders dismissal without prejudice."); *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir.1963) (en banc) ("[A] dismissal for failure to state a claim upon which relief can be granted is with prejudice.").

with leave to replead.[8]

### 2. Counts Two and Three: the FRLA and Anti–Bribery Statutes.

Count Two of the complaint alleges that the Directors' expenditure of funds for the support of GE/PAC constituted "expenditures made with the intent of influencing, directly or indirectly, the passage or defeat of legislation," and that these payments should therefore have been reported pursuant to the FRLA's reporting requirements. The Directors' failure to report these expenditures, Count Two contends, exposed GE to prosecution and punishment under 2 U.S.C. § 269, and so constituted a breach of fiduciary duty. We believe that the district court properly dismissed this claim.

■ Stern argues that *United States v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954), which held that "direct communication" with members of Congress through an agent constitutes lobbying under the FRLA, *id.* at 620, 74 S.Ct. at 813, supports his contention that the Directors' actions should have been reported. We do not agree. It is the corporate employees who contribute the money that GE/PAC uses to lobby members of Congress. The Directors' support of GE/PAC is limited to funding its administrative expenses, and encouraging corporate employees to make voluntary contributions. Because these expenditures do not constitute "direct communication" with government officials, they need not be reported under the FRLA. As such, the Directors did not expose GE to liability under the FRLA, and the allegations in Count Two are unfounded.

■ In Count Three, Stern alleges that the Directors exposed GE to liability by "authorizing, directing and acquiescing" in GE/PAC's violation of the federal anti-bribery statute, Pub.L. No. 87–849, 76 Stat. 1121–22 (1962) (codified at 18 U.S.C. § 203). Specifically, Stern alleges that certain GE/PAC contributions were made to incumbent members of Congress with the knowledge that these contributions might be converted to the official's personal use. This claim is wide of the mark. At the time the complaint was filed, federal law permitted certain members of Congress to convert excess contributions to their personal use. *See* 2 U.S.C. § 439a (1988).[9] Given that the conversion of funds to personal use was lawful, we cannot see how contributions made with the knowledge that such conversion might take place would, in themselves, violate the statute. Criminal intent under section 203 turns not on what the contributor expects the recipient to do with the money, but rather on what the contributor expects to receive for that money.

Accordingly, the judgment of the district court is affirmed with respect to Counts Two and Three of the complaint. However, with respect to Counts One and Four, the judgment is reversed and the case remanded with instructions to modify the judgment to grant Stern leave to replead.[10]

---

**8.** We note, however, that to survive a future motion to dismiss, Stern will have to do more than add the words "bad faith" to the complaint. Rather, if he intends to amend the complaint to allege that the Directors' actions were motivated by an improper purpose, he must state what that purpose was, and why it was improper, in terms clear enough to provide notice to appellees of the nature of the claim and the grounds on which relief is sought. *See* Fed.R.Civ.P. 8(a). Likewise, he must make clear why the Directors' actions constituted waste, and why their expenditures were "unreasonable and excessive."

**9.** Section 439a was amended on November 30, 1989 to disallow such conversion. *See* Ethics Reform Act of 1989, Pub.L. No. 101–194, § 504(a), 103 Stat. 1755.

**10.** In the event Stern chooses to replead Counts One and Four, the district court should then determine the collateral estoppel effect, if any, of the D.C. Circuit's recent opinion in Stern's administrative complaint against the FEC.