Dwight E. WININGER, on behalf of himself and all others similarly situated, Plaintiff,

v.

SI MANAGEMENT L.P., a limited partnership, et al., Defendants.

No. C 97–01622 CW.

United States District Court, N.D. California.

Sept. 24, 1998.

Robert W. Mills, The Mills Firm, Greenbrae, CA.

Alex J. Luchenitser, The Mills Law Firm, Greenbrae, CA.

David A. Jenkins, Smith Katzenstein & Furlow LLP, Wilmington, DE.

Craig B. Smith, Smith Katzenstein & Furlow LLP, Wilmington, DE.

George H. Brown, Heller Ehrman White & McAuliffe, Palo Alto, CA.

Bruce D. Angiolillo, Simpson Thacher & Bartlett, New York City.

John K. Kim, Simpson Thacher & Bartlett, New York City.

Charles M. Kagay, Spiegel Liao & Kagay, San Francisco, CA.

William H. Bode, Bode & Beckman LLP, Washington, DC.

ORDER GRANTING PLAINTIFF'S MOTION TO AMEND AND SUPPLEMENT COMPLAINT; DENYING DEFENDANTS' MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL AND DENYING RELATED MOTIONS AS MOOT

WILKEN, District Judge.

Pending before the Court are the following motions: (1) Plaintiff's motion for partial summary judgment (Docket No. 58); (2) Pro-

posed Pro–Plan Intervenors' motion to disqualify Plaintiff's counsel (Docket No. 134); (3) Plaintiff's related motions to strike exhibits submitted by Proposed Pro–Plan Intervenors or, in the alternative, for leave to file supplemental materials (Docket No. 168, Parts 1 and 2); (4) Defendants' motion to dismiss the entire action as moot (Docket No. 205); and (5) Plaintiff's motion to amend and supplement his complaint. All motions are opposed.

These matters were heard on September 4, 1998. Having considered all of the papers filed by the parties and oral argument on the motions, the Court grants Plaintiff's motion to amend, denies Defendants' motion to dismiss, denies Plaintiff's motion for partial summary judgment without prejudice, denies Proposed Pro–Plan Intervenors' motion to disqualify, and denies Plaintiff's motions to strike and for leave to file supplemental materials as moot.

## BACKGROUND

The facts of this case were discussed in the Court's August 4, 1997 Order denying Plaintiff's motion for a preliminary injunction. *See* Order of August 4, 1997.

On March 21, 1997, Defendant Leonard Chill, the president of Synthetic Industries, Inc. (the Company), sent a letter to the limited partners of Synthetic Industries, L.P. (the Limited Partnership). Declaration of Alex J. Luchenitser, Exh. A. He sent this letter on behalf of Defendant SI Management LP (the General Partner), the sole general partner of the Limited Partnership. *Id.* The letter announced the General Partner's plan (the Plan or the Proposed Plan) to dissolve the Limited Partnership. Mr. Chill stated in the letter that the General Partner "believes the Plan will satisfy the diverse needs [of the limited partners] in a fair, equitable and tax efficient manner." *Id.* Mr. Chill stated further that the terms of the Proposed Plan "are intended to distribute the Partnership's assets to you in a manner that is in all of your best interests. We will not conduct a stock offering at a price that, at the time, does not represent fair value for the shares." *Id.* The letter provided only a general outline for the Proposed Plan, but stated that the details would

be worked out and that a proxy statement would be distributed describing the Plan in detail. *Id.*

On May 1, 1997, Plaintiff filed a complaint in this Court, alleging that the March 21 letter was a proxy solicitation that should have been filed with the Securities and Exchange Commission (SEC). He alleged further that Defendants violated SEC regulations regarding the disclosure of material facts relating to proxy solicitations.

On May 23, 1997, Plaintiff moved for a preliminary injunction prohibiting Defendants from conducting further solicitation concerning the Proposed Plan until Defendants did each of the following: (1) filed a proxy statement with the SEC and sent a copy of it to the limited partners, (2) filed the March 21 letter with the SEC, and (3) sent a corrective disclosure to the limited partners.

The Company filed a joint proxy statement and prospectus with the SEC on June 9, 1997. That same day, the Company issued a press release about the Proposed Plan. Luchenitser Decl., Exh. B. The press release briefly described the Proposed Plan and included the following statement by Mr. Chill: "With this plan, we are delivering on our promise to enhance liquidity for limited partners in our majority shareholder, while increasing the public float for common shareholders in a non-dilutive manner." *Id.*

By Order of August 4, 1997, the Court found that Plaintiff had demonstrated a likelihood of success on the merits of his claim that the March 21 letter was a proxy solicitation under the test announced in *Capital Real Estate Investors Tax Exempt Fund Limited Partnership v. Schwartzberg*, 929 F.Supp. 105, 111 (S.D.N.Y.1996). Order of August 4, 1997, at 9. The Court found further that Plaintiff had demonstrated a likelihood that the June 9 press release violated SEC proxy statement regulations. *Id.* at 10. The Court, however, denied Plaintiff's motion for a preliminary injunction because he had made only a weak showing of harm and because issuance of an injunction might have distorted the decision-making process concerning the Proposed Plan. *Id.*

Defendants originally scheduled for October 24, 1997 a special limited partners' meeting ("the Special Meeting"), at which the limited partners would vote on the Proposed Plan. After realizing that certain proxies had been mailed in error to some of the limited partners, Defendants postponed the meeting until Friday, November 7, 1997, to allow time to send out a revised proxy and an explanation of the previous error.

On October 23, 1997, the Delaware Chancery Court issued a ruling on a motion for a preliminary injunction brought by Plaintiff Wininger in his related suit in that State court. The Delaware court did not enjoin the vote on the Proposed Plan but enjoined the implementation of the Plan if it was approved.

The Special Meeting was held on November 7, 1997. Limited partners holding 70.72% of the limited partnership interests voted in favor of the implementation of the Plan; 13.53% of the interests voted against the Plan; and .61% abstained. 15.14% did not vote at the Special Meeting, either in person or by proxy.

By Order of March 19, 1998, the Delaware Supreme Court affirmed the Delaware Chancery Court's issuance of a preliminary injunction against the Proposed Plan of Withdrawal and Dissolution. On May 14, 1998, Defendants issued a press release stating that they had withdrawn the Proposed Plan.

## DISCUSSION

I. Proposed Pro Plan Intervenors' Motion to Disqualify Counsel and Related Motions

### A. Background

On December 23, 1997, Proposed Pro–Plan Intervenors Joel M. Boyden, Frances M. Donovan, Charles F. Odenbach, Pedro P. Ponce, Randy Price, John Pullen and Gregory Stoia moved to intervene in this action, asserting that their interests were at odds with Plaintiff's interests because Plaintiff sought to enjoin the implementation of the Proposed Plan of which they approved. These Proposed Pro–Plan Intervenors also moved to disqualify the Mills Law Firm,

Plaintiff's counsel. Plaintiff opposed both motions. Defendants did not join in the motions to intervene and to disqualify, oppose them, or file a notice of non-opposition. The motions were heard on February 6, 1998.

On February 26, 1998, Plaintiff filed a proposed order denying Proposed Pro–Plan Intervenors' motions to intervene and to disqualify the Mills Law Firm. Proposed Pro–Plan Intervenors filed objections to this proposed order and attached exhibits to their objections. On March 12, 1998, Plaintiff moved to strike these exhibits or, in the alternative, for leave to file a supplemental declaration. Proposed Pro–Plan Intervenors opposed this motion. No hearing was held on Plaintiff's motion. By Order of May 28, 1998, the Court denied Proposed Pro–Plan Intervenors' motion to intervene. May 28, 1998 Order at 7.

On May 29, 1998, after the Proposed Plan had been withdrawn, the Court issued a notice of intended ruling denying Proposed Pro–Plan Intervenors' motion to disqualify and denying Plaintiff's motion to strike exhibits or file supplemental materials as moot. See Notice of Intended Ruling Denying Motion to Disqualify of May 29, 1998 at 1. The Court granted Defendants and Pro–Plan Intervenors, as friends of the Court, leave to file an opposition to the intended ruling and granted Plaintiff leave to file a reply to any such opposition. Pro–Plan Intervenors' filed an opposition to the Court's intended ruling, and Plaintiff filed a reply. Defendants filed no opposition to the intended ruling.

### B. Motion to Disqualify Counsel

■ Proposed Pro–Plan Intervenors asserted two related bases for their motion to disqualify the Mills Law Firm. First, they asserted that the Mills Law Firm had in the past represented Limited Partners who favored the Proposed Plan. Second, they asserted that the Mills Law Firm currently represented Limited Partners who favored the Plan.

In their opposition to the Court's intended ruling denying this motion, Proposed Pro–Plan Intervenors assert that, even though the Proposed Plan has been withdrawn, their interests remain directly at odds with the

interests of Plaintiff and his counsel. However, they fail to explain how this is the case. Proposed Pro–Plan Intervenors now assert that their interest is to seek a prompt dissolution of the partnership. They do not indicate, however, how Plaintiff's action as it currently stands, seeking compensatory damages and injunctive relief preventing Defendants from committing securities violations in the future, will impede a prompt dissolution of the partnership. Plaintiff has also indicated that he, like Proposed Pro–Plan Intervenors, seeks a prompt dissolution of the partnership. *See* Opposition to Motion to Intervene and Disqualify Counsel at 4.

Because the Proposed Plan has been withdrawn and Plaintiff's counsel now seeks only compensatory damages and an injunction to prevent Defendants from committing securities violations in the future, the Court finds that Plaintiff's counsel no longer represents interests in opposition to Limited Partners who supported the Proposed Plan. The motion to disqualify Plaintiff's counsel is denied.

### C. Motion to Strike Exhibits or File Supplemental Material

As indicated above, Plaintiff previously filed a proposed order, to which Proposed Pro–Plan Intervenors objected, regarding Proposed Pro–Plan Intervenors' motions to intervene and to disqualify Plaintiff's counsel. Plaintiff moved to strike exhibits attached to Proposed Pro–Plan Intervenors' objections. Neither Proposed Pro–Plan Intervenors nor Plaintiff filed any objections to the Court's intended ruling denying Plaintiff's motion to strike.

Because the Court did not consider Plaintiff's proposed order, the objections thereto, or the attachments in deciding Proposed Pro–Plan Intervenors' motions to intervene and to disqualify counsel, the Court denies Plaintiff's motion to strike as moot.

### II. Plaintiff's Motion to Amend and Supplement Complaint

### A. Background

Plaintiff moves to amend and supplement his First Amended Complaint. He asserts that the Second Amended and Supplemental Complaint (SASC) adds no new causes of action, deletes some causes of action, and modifies only the relief sought for Defendants' alleged securities violations. Plaintiff's SASC describes how the Partnership and the Limited Partnership have been damaged since his First Amended Complaint was filed on October 31, 1997. Plaintiff alleges that Defendants' securities violations caused the Partnership to incur expenses relating to the Plan. In the SASC, Plaintiff seeks relief for such damages and for damages he sustained by preparing and disseminating communications to the Limited Partners designed to counter Defendants' violations.

Plaintiff also seeks to add limited partner Charlene Sutherland as a Plaintiff. By Order of May 28, 1998, the Court denied Ms. Sutherland leave to intervene as a separate Plaintiff. At that time, Ms. Sutherland was represented by separate counsel. She asserted that Plaintiff did not represent her interests and that she wished to file briefs on her own behalf against Defendants. The Court saw no reason to allow her to intervene and file separate briefs because Plaintiff did adequately represent her interests. Plaintiff alleges that since May 14, 1998, when Defendants withdrew the proposed Plan, Ms. Sutherland has proposed a second plan for dissolution of the Limited Partnership (the Sutherland Plan). The SASC amends the requests for injunctive relief in light of these recent events. Plaintiff no longer seeks injunctive relief aimed at the now-withdrawn Proposed Plan. Instead, Plaintiff and Ms. Sutherland seek a permanent injunction preventing Defendants from violating securities laws in the future and a preliminary injunction preventing Defendants from making solicitations in opposition to the Sutherland Plan unless they refrain from repeating their prior misrepresentations and nondisclosures. The SASC also adds the Limited Partnership as a nominal Defendant so that damages may be recovered derivatively on its behalf.

Plaintiff argues that his amendment should be allowed under the liberal standard of Rule 15 of the Federal Rules of Civil Procedure.

Defendants oppose, asserting that leave to amend should be denied because amendment

would be futile. Defendants argue that Plaintiff's damages claims are moot and are not revived by the SASC; they argue further that Plaintiff's claim for injunctive relief is meritless.

### B. Order of Deciding Motions

Plaintiff asserts that the Court should examine his motion to amend the complaint before considering Defendants' motion to dismiss as moot so that the Court can evaluate the viability of Plaintiff's claims as they now stand rather than as they stood in October, 1997, when his First Amended Complaint was filed. Defendants do not respond to this argument.

■ The Court will determine whether Plaintiff should be allowed to amend and supplement his complaint before deciding whether to dismiss the entire case as moot. Doing so will allow the Court to determine if Plaintiff has, to date, alleged any potentially viable claims that would allow his action to proceed. Because Defendants were afforded an opportunity to address Plaintiff's proposed amended claims in both their opposition to the motion to amend and their reply to the motion to dismiss, the Court finds that deciding the motions in this order will not prejudice Defendants.

### C. Legal Standard for Motion to Amend

■ Federal Rule of Civil Procedure 15(a) provides that leave of the court allowing a party to amend its pleading "shall be freely given when justice so requires." Leave to amend lies within the sound discretion of the trial court. This discretion "must be guided by the underlying purpose of Rule 15—to facilitate decisions on the merits rather than on the pleadings or technicalities." *United States v. Webb,* 655 F.2d 977, 979 (9th Cir.1981) (citations omitted). Thus, Rule 15's policy of favoring amendments to pleadings should be applied with "extreme liberality." *Id.; DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir.1987) (citations omitted).

■ The Supreme Court has identified four factors relevant to whether a motion for leave to amend should be denied: undue delay, bad faith or dilatory motive, futility of amendment, and prejudice to the opposing party. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Further, the "liberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties." *DCD Programs,* 833 F.2d at 186. The court should instead consider whether the proposed amendment would cause the opposing party undue prejudice, is sought in bad faith, or is futile. *Id.* (citing *Acri v. International Ass'n of Machinists & Aerospace Workers,* 781 F.2d 1393, 1398–99 (9th Cir.1986); *United States v. City of Twin Falls,* 806 F.2d 862, 876 (9th Cir.1986)).

■ The only basis Defendants raise for denying Plaintiff's motion is futility. The Ninth Circuit has held that a court does not err in denying a plaintiff leave to amend when the amendment would be futile or when the proposed amended complaint would be subject to dismissal. *Saul v. United States,* 928 F.2d 829, 843 (9th Cir.1991). A proposed amendment is futile, however, only if no set of facts that can be proven under the amendment would constitute a valid claim. *Miller v. Rykoff–Sexton, Inc.,* 845 F.2d 209, 214 (9th Cir.1988).

### D. Federal Claims for Damages

In the SASC, Plaintiff alleges that Defendants violated federal securities laws on multiple occasions, resulting in damages to the Partnership, the Limited Partners, and Plaintiff. Specifically, Plaintiff alleges in the SASC that Defendants' misrepresentations and nondisclosures caused the following injuries: (1) expenses incurred by the Partnership connected with two corrective disclosures that Defendants sent to the Limited Partners to remedy their securities violations; (2) expenses incurred by the Partnership after the November vote in connection with attempts to cause the Proposed Plan to be implemented; and (3) expenses incurred by Plaintiff in filing with the SEC and sending out to the Limited Partners communications designed to counter Defendants' misrepresentations and nondisclosures. SASC at ¶¶ 168–170.

Defendants argue that the first two damages claims listed above are simply disguised State law claims for waste of assets rather than federal securities law claims. According to Defendants, these claims are therefore not cognizable under the federal securities law. Defendants rely on *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), and *Stern v. General Electric Co.*, 924 F.2d 472 (2d Cir.1991), for this proposition.

These cases, however, are distinguishable. In *Santa Fe*, the Supreme Court rejected the proposition that "a breach of fiduciary duty ... without any deception, misrepresentation, or nondisclosure" violates federal law. 430 U.S. at 476, 97 S.Ct. 1292. The Court ruled that a claim of breach of fiduciary duty states a claim under federal securities law "only if the conduct alleged can be fairly viewed as 'manipulative or deceptive' within the meaning of the statute." *Id.* at 473–74, 97 S.Ct. 1292. The Court did not hold, however, that the fact that a defendant breached fiduciary duties under State law somehow relieves the defendant of liability under federal law, as Defendants imply. The Supreme Court allowed for the possibility that if a breach of fiduciary duty involves manipulation or deception, a plaintiff may assert claims under both State law and federal securities law. *Id.; see Lewis v. McGraw*, 495 F.Supp. 27 (S.D.N.Y.1979), *aff'd*, 619 F.2d 192 (2d Cir.1980) ("while plaintiffs' claims may involve breaches of fiduciary duty, their claims involve nondisclosure and misleading disclosures as well").

*Stern* is also distinguishable. It dealt with allegations that corporate directors had wasted corporate assets in violation of State law in funding a political support committee. *Id.* 924 F.2d at 473. The defendants argued that these State law claims fell within the exclusive jurisdiction of the Federal Election Commission. The *Stern* court concluded that the corporate directors' actions were cognizable under State law and were not preempted by the Federal Election Campaign Act. *Id.* 924 F.2d at 474. *Stern* did not concern allegations of violations of federal securities laws or conclude that allegations such as

Plaintiff's would be cognizable only under State law.

Unlike the plaintiffs in *Stern* and *Santa Fe*, Plaintiff alleges that Defendants made deceptive, manipulative misrepresentations, potentially actionable under federal securities law. The fact that these allegations might also support State law claims for breach of fiduciary duty does not insulate Defendants from federal liability.

Defendants' second argument is that Plaintiff cannot allege any conceivable injury actually caused by Defendants' proxy solicitations because the Plan was withdrawn. Defendants assert that there is no causal link between the alleged disclosure violations and any harm to the Partnership. They assert that the damages alleged, assets Defendants spent in attempting to win approval for the Plan, have nothing to do with the alleged proxy violations and would have been spent whether or not the proxy materials violated the securities laws.

Defendants characterize Plaintiff's damages claims as claims for "consequential" damages which, according to Defendants, can only be awarded in addition to actual damages that are caused directly by a securities law violation. Defendants assert that, to recover damages, Plaintiff must prove that they in fact violated the securities laws and that, as a result, Plaintiff suffered monetary damages.

Indeed, courts have held that damages can be awarded in a private action under the securities laws only when the plaintiff establishes that the alleged violations of the securities laws caused economic harm. *See, e.g., DCD Programs, Ltd. v. Leighton*, 90 F.3d 1442, 1447 (9th Cir.1996); *Shapiro v. Midwest Rubber Reclaiming Co.*, 626 F.2d 63, 70 (8th Cir.1980) (damages not awarded because plaintiffs failed to establish that they were harmed by challenged acts of defendants). Defendants ignore key allegations in the SASC, however, claiming that their alleged misrepresentations actually caused Plaintiff and the Partnership economic injury and were not simply incidental to such injury.

Plaintiff alleges that he incurred expenses as a result of the alleged misrepresentations

contained in the March 21 letter and the April 9 press release because he prepared, filed, and disseminated a revised proxy statement that responded to these misrepresentations. *Id.* at ¶ 43. Plaintiff also alleges that the Partnership incurred expenses because Defendants had to send out corrective disclosures to remedy other misrepresentations.

Several courts have held that such damages are recoverable if they were caused by violations of securities laws. In *CNW v. Japonica Partners, L.P.*, 776 F.Supp. 864, 869 (D.Del.1990), the Court held that the plaintiff could recover expenses it incurred in responding to an illegal proxy solicitation. The plaintiff alleged that the defendant had violated § 14(a) of the Securities Exchange Act by issuing false proxy materials and, as a result, it had to spend money to send out a response to such materials. In holding that such damages were recoverable, the *CNW* court held that the Supreme Court has instructed federal courts to be liberal in granting remedies under section 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n(a), the section under which Mr. Wininger is proceeding. *Id.* 776 F.Supp. at 869 (citing *J.I. Case v. Borak*, 377 U.S. 426, 431, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) (courts have a duty to provide such remedies as are necessary to make effective the congressional purpose of preventing management from obtaining authorization for corporate action by means of deceptive, inadequate disclosures)). Other courts have held similarly. *See also In re Haas,* 36 B.R. 683, 690 (Bkrtcy.N.D.Ill. 1984) (plaintiff who sought damages for proxy solicitation sent in response to unlawful proxy solicitation stated a valid claim); *In re Crazy Eddie Securities Litigation,* 948 F.Supp. 1154, 1173 (E.D.N.Y.1996) (plaintiff could recover expenses incurred in waging proxy fight in response to defendants' misrepresentations).

Defendants attempt to distinguish *CNW* by stating that the issue in the case was whether, after a securities violation had been found, the plaintiff was permitted to seek damages for costs related to that adjudged violation. Defendants assert that there has not been any finding that Defendants have violated securities laws. Defendants appear to concede, however, that *CNW* would support the award of damages for the cost of Plaintiff's response if they were found to have violated the securities laws. As the Court indicated in the Order of August 4, 1997, Plaintiff has raised serious questions concerning whether Defendants have committed violations. Furthermore, in the context of a motion to amend, the Court assumes the truth of Plaintiff's allegations. If Defendants have violated the securities laws by making misrepresentations, Plaintiff would be able to state a claim for money spent to correct such misrepresentations.

Plaintiff also presents authority that the expenses incurred by the Partnership to correct the disclosures made by Defendants are recoverable. In *Maldonado v. Flynn*, 477 F.Supp. 1007, 1010 (S.D.N.Y.1979), the Court held that the expenses of a new proxy solicitation sent out to correct statements made in false proxy materials are recoverable as damages for the proxy violations. The *Maldonado* court held that if it ordered a new, corrected proxy solicitation to be sent out, the plaintiffs could seek to recover the costs of such a solicitation. *Id.* 477 F.Supp. at 1010. Defendants attempt to distinguish *Maldonado* by asserting that it did not concern voluntary curative disclosures such as those sent out by Defendants. The *Maldonado* court, however, premised the availability of these damages not on whether the disclosure was voluntary or court-ordered but on whether the expense of new disclosures was "attributable to the false proxy statements." *Id.* Assuming Plaintiff's allegations are true, the curative disclosures sent by Defendants were attributable to false proxy statements that violated the securities laws.

 Defendants' third argument is that Plaintiff cannot assert a claim for damages that he incurred in preparing and disseminating communications in response to Defendants' alleged violations because Plaintiff's attorneys advanced the costs of such activity. Defendants assert that Plaintiff's request for damages is essentially a request for attorneys' fees. Such fees, according to Defendants, would be in violation of the Private Securities Litigation Reform Act of 1995 (PSLRA), which limited attorneys' fees to a

reasonable percentage of actual damages. *See* 15 U.S.C. § 77z–1(a)(6).

The fact that Plaintiff's counsel advanced the costs of the proxy solicitation, however, does not convert such costs into attorneys' fees.

Defendants' fourth argument is that there is no jurisdiction to support Plaintiff's State law claims for corporate waste or breach of fiduciary duty. Because there is no federal jurisdiction over the case, Defendants imply, the Court cannot exercise pendent jurisdiction over such State claims. As indicated above, however, the claims that Defendants characterize as State law claims may also be brought as federal securities law claims if the conduct alleged also violates federal law. *See Santa Fe*, 430 U.S. at 473–74, 97 S.Ct. 1292.

The Court finds that Plaintiff has alleged facts which, if proven, will demonstrate that securities violations by Defendants caused the Partnership and Plaintiff to incur expenses. Nothing more is required for a recovery of damages under 15 U.S.C. § 78n(a).

### E. Plaintiff's Claim for Injunctive Relief

■ In the SASC, Plaintiff seeks two forms of injunctive relief. First, Plaintiff seeks a permanent injunction prohibiting Defendants from committing future violations of securities laws. Plaintiff bases this request on the numerous violations of SEC Rule 14a–9 that he alleges Defendants committed and on Defendants' failure to give any assurances that they will not violate the securities laws in the future. Second, Plaintiff alleges that Ms. Sutherland will soon begin soliciting proxies for the Sutherland Plan and he expects Defendants to send proxy solicitations to the Limited Partners in opposition. SASC at ¶ 163. Plaintiff seeks a preliminary injunction, prohibiting Defendants from sending the Limited Partners proxy solicitations in opposition to the Sutherland Plan unless they refrain from repeating their prior misrepresentations and nondisclosures or committing new securities violations.

Defendants assert that Plaintiff's claim for a permanent injunction is futile because he will be unable to establish irreparable injury or that the balance of hardships tips in his favor. Defendants assert further that Plaintiff's request for a preliminary injunction concerning the Sutherland Plan is futile because it is not ripe. Defendants assert that the Sutherland Plan has not yet been finalized and that they have not made any communications to the Limited Partners concerning it.

■ The Supreme Court and the Ninth Circuit have held that permanent injunctions may be granted when there is "a reasonable likelihood of future violations of the securities laws." *United States v. W.T. Grant Co.*, 345 U.S. 629, 635, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir.1980). The existence of past securities violations may give rise to an inference that there will be future violations, "and the fact that the defendant is currently complying with the securities laws does not preclude an injunction." *Murphy*, 626 F.2d at 655. In predicting the likelihood of future violations, a court must consider such factors as the isolated or recurrent nature of the violations, the defendant's recognition of the wrongful nature of his conduct, the likelihood, because of the defendant's occupation, that future violations may occur, and the sincerity of any assurances against future violations. *Id.*

■ Defendants attempt to distinguish *Murphy* by pointing out that it was prosecuted by the SEC and that private plaintiffs seeking permanent injunctions bear a heavier legal burden than the SEC. Private plaintiffs, unlike the SEC, must demonstrate the possibility of irreparable injury. Although private plaintiffs may have a heavier burden, Defendants present no authority, and the Court knows of none, indicating that private plaintiffs may not obtain permanent injunctive relief to remedy securities violations. Indeed, the Supreme Court has held that a private plaintiff may obtain a permanent injunction for a violation of securities laws if he or she shows that irreparable harm will result in the absence of the remedy. *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 57, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975).

■ Assuming all of Plaintiff's factual allegations are true, Defendants have committed multiple securities violations, have not acknowledged the wrongful nature of their conduct, have provided no assurances against future violations, and now have an incentive to commit such violations in response to the Sutherland Plan. Depriving securities holders of the right to cast a fully informed vote constitutes irreparable injury. August 4, 1997 Order at 10. Accordingly, the Court finds that Plaintiff's request for a permanent injunction is not futile.

■ Defendants' argument concerning Plaintiff's ability to succeed in his preliminary injunction claim is similarly unpersuasive. Defendants argue that Plaintiff will not be able to demonstrate a combination of probable success on the merits and the possibility of irreparable harm. However, in a motion to amend, Plaintiff need only show that some set of facts could be proved which would constitute a valid claim. See Miller, 845 F.2d at 214. Plaintiff alleges that there are three specific misrepresentations that Defendants made in connection with the Plan which they will likely make in any opposition to the Sutherland Plan. If they demonstrate that Defendants made such misrepresentations and that they would likely make them again, an injunction would be appropriate. See Murphy, 626 F.2d at 655.

As indicated above, Plaintiff could also demonstrate irreparable injury if he can show that misrepresentations by Defendants would deprive the Limited Partners of the ability to cast a fully informed vote on the Sutherland Plan. The Court finds, therefore, that Plaintiff's request for a preliminary injunction is not futile.

In light of the policy favoring amendment, the Ninth Circuit's holding that this policy is to be applied "with extraordinary liberality," Morongo, 893 F.2d at 1079, and Defendants' failure to show that no set of facts could be proven to support the claims of Plaintiff's SASC, the Court grants Plaintiff's motion to amend.

III. Defendants' Motion to Dismiss Action as Moot

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, Defendants move to dismiss this entire action as moot. Defendants' motion was originally filed in response to Plaintiff's First Amended Complaint. Since Defendants' motion was filed, however, Plaintiff submitted his SASC which, as indicated above, the Court grants leave to file. Because Defendants' arguments can be made against the SASC as well, the Court considers their motion in that light also.

■ Defendants assert that all of Plaintiff's claims either relate to the withdrawn Proposed Plan or are futile, as they argue in their opposition to Plaintiff's motion to amend. Specifically, Defendants argue that Plaintiff's allegations of securities fraud violations relating to the March letter, the April press release, the proxy and proxy statement, and the quarterly report were mooted when the Plan was withdrawn. They argue further that a permanent injunction against any future violations is unwarranted because they did not violate the securities law and because Plaintiff will be unable to prove irreparable harm or the likelihood of success on the merits. Defendants argue further that Plaintiff is not entitled to the damages that he seeks because neither he nor the Partnership suffered any actual harm as a result of Defendants' activities.

As discussed above, Plaintiff responds that he and the Partnership suffered damages as a result of Defendants' activities. He repeats the arguments raised in his motion to amend that he has a viable claim for permanent injunctive relief.

A. Legal Standard under Rule 12(b)(1)

■ Rule 12(b)(1) provides that a complaint may be dismissed for lack of subject matter jurisdiction. The plaintiff bears the burden of establishing subject matter jurisdiction. The Supreme Court has held that the court must presume lack of jurisdiction until the plaintiff establishes otherwise. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).

■ The jurisdiction of the federal courts "depends on the existence of a case or

controversy under Article III of the Constitution." *GTE California, Inc. v. FCC*, 39 F.3d 940, 945 (9th Cir.1994). An actual controversy must exist at all stages of the case, and not simply at the date the action was initiated. *See Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). A case becomes moot when the issues presented "are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Public Utilities Commission of California v. FERC*, 100 F.3d 1451, 1458 (9th Cir.1996) (citations and internal quotation marks omitted). The court must be able to grant effective relief or it lacks jurisdiction and must dismiss the action. *Id.*

In his SASC, one form of relief Plaintiff seeks is a declaratory judgment. The Ninth Circuit in *Public Utilities Commission* held that in determining whether such a request has become moot, the question is whether the facts alleged "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (internal quotation marks omitted).

## B. Mootness of Alleged Securities Law Violations

Defendants assert that all of Plaintiff's allegations concerning their actions taken in connection with the Proposed Plan are entirely moot because the Plan has been withdrawn. They argue that even if they committed such violations, it is no longer possible for anyone to be misled by their misrepresentations. The Ninth Circuit has held that a court should not make an adjudication that there was a securities law violation if it cannot be the basis of any effective relief. *See Isaacs Bros. Co. v. Hibernia Bank*, 481 F.2d 1168, 1171 (9th Cir.1973).

Plaintiff asserts that Defendants' violations can be the basis of three forms of relief: damages, declaratory relief, and injunctive relief.

### 1. Declaratory Relief.

 As one court has noted, "if past violations of the securities laws will have no present or future effect, courts will not issue declaratory judgments regarding the unlawfulness of the past conduct." *CNW*, 776 F.Supp. at 868. The *CNW* court found that a declaration that the defendants' past proxy solicitation was illegal would not aid shareholders in evaluating a future proxy solicitation. *Id.* The only effect the declaratory judgment would have would be to help the plaintiffs in defending against the defendants' counterclaims. *Id.* The *CNW* court declined to issue a declaratory judgment because it would have such a limited prospective effect.

Although in its tentative ruling on Plaintiff's motion for partial summary judgment, the Court expressed doubts that declaratory relief concerning Defendants' securities law violations would have present or future effects, Plaintiff has brought to the Court's attention recent events which makes such effects likely. Plaintiff points out that a new plan has been proposed by Ms. Sutherland. According to Plaintiff, Ms. Sutherland has filed her plan with the SEC, has responded to the SEC's comments on the plan by filing a revised proxy statement, and expects soon to begin soliciting proxies for the plan. Plaintiff also alleges that Defendants will almost certainly oppose the Sutherland Plan because it involves the removal of Defendant General Partner and could result in the removal of individual Defendants from their executive positions with the company. *See* SASC at ¶ 123.

In light of the likelihood of a proxy battle between Defendants and Plaintiff over the Sutherland Plan, the Court concludes that past violations of the securities laws by Defendants may have a present or future effect. Unlike the situation in *CNW*, a declaration that Defendants' past proxy solicitation was illegal would likely aid Limited Partners in evaluating the future proxy solicitation by Sutherland and Defendants. The Court finds, therefore, that Plaintiff's request for declaratory relief concerning Defendants' alleged securities violations is not moot.

### 2. Damages Claims

As discussed in Section II, the Court finds that Plaintiff has alleged potentially valid

claims for damages under the securities laws. Assuming Plaintiff's allegations are true, Plaintiff will be able to prove facts indicating that Defendants' violations caused injuries to the Partnership and to himself.

Because the Court is able to grant effective relief on these alleged violations, the Court has jurisdiction over these claims. *See Public Utilities Commission,* 100 F.3d at 1458.

### 3. Injunctive Relief

As indicated in Section II, above, the Court finds also that Plaintiff might be able to obtain permanent and preliminary injunctive relief for Defendants' past securities violations. Although Plaintiff may have a heavier burden in seeking such relief than the SEC, Plaintiff is not precluded from doing so. If he can show that Defendants committed multiple past violations and that it is likely that such violations will continue, he might be able to obtain such relief.

Because Plaintiff may be entitled to damages, declaratory relief and injunctive relief for Defendants' alleged violations, Plaintiff's securities law action remains a live controversy even though the Proposed Plan has been withdrawn. The Court finds that the parties continue to have legally cognizable interests in the outcome of this action. *See Public Utilities Commission,* 100 F.3d at 1458. Defendants' motion to dismiss for lack of subject matter jurisdiction is denied.

### IV. Plaintiff's Motion for Partial Summary Judgment

▋ Plaintiff filed his motion for partial summary judgment on September 19, 1997, arguing that the March 21 letter and the June 9 press release were proxy solicitations and that such solicitations violated federal securities laws because they were made prior to the dissemination of a proxy statement and were not filed with the SEC. Plaintiff asserts that, for the purposes of this motion, he seeks partial summary judgment only on the issue of Defendants' liability for violating the proxy provisions of the federal securities laws. His motion seeks an order adjudicating that Defendants violated SEC Rules 14a–3, 14a–6, and 14a–9 in connection with these two documents. He asserts further that this motion does not seek damages or any other form of relief.

Defendants oppose the motion, asserting that genuine issues of material fact exist regarding whether the March 21 letter was a proxy solicitation; whether any alleged omissions or misrepresentations in that letter were material in light of the subsequent filing and distribution of a definitive proxy statement; whether the March 21 letter caused any injury to Plaintiff; and whether Defendants' conduct was culpable. Defendants argue further that Plaintiff's motion is moot for two reasons: (1) after the March 21 letter and June 9 press release, they distributed a proxy statement that contained a full description of the Plan, and (2) Defendants have withdrawn the Plan.

The Court denies Plaintiff's motion without prejudice as premature. The pleadings are not yet settled. Plaintiff's motion essentially seeks a declaration that Defendants violated the proxy rules in March and June, 1997, out of the context of any showing of damages or need for injunctive relief. The Court is not inclined to make such a determination without a showing that damages or injunctive relief may be appropriate. After the complaint has been answered and the motion for class certification decided, Plaintiff may move for summary adjudication of these claims in conjunction with a showing that he is entitled to damages or injunctive relief. Whether Plaintiff is entitled to injunctive relief will depend in part on the number and severity of any securities law violations. *See Murphy,* 626 F.2d at 655.

### CONCLUSION

For the reasons stated above, the Court rules as follows: (1) Proposed Pro–Plan Intervenors' motion to disqualify Plaintiff's counsel (Docket No. 134) is denied; (2) Plaintiff's motion to strike exhibits or, in the alternative, to file supplemental materials (Docket No. 168, Parts 1 and 2) is denied as moot; (3) Plaintiff's motion to amend (Docket No. 211) is granted; (4) Defendants' motion to dismiss the action as moot (Docket No. 205) is denied; (5) Plaintiff's motion for par-

tial summary judgment (Docket No. 58) is denied without prejudice.

The Court deems the SASC filed as of the date of this Order. If Defendants wish to a file a motion to dismiss it, they shall notice it for November 20, 1998.

In the May 28 Order, the Court denied Plaintiff's motion for class certification without prejudice, pending Defendants' motion to dismiss the entire action. May 28 Order at 7. The Court also stated that Plaintiff may refile his motion for class certification if the Court does not dismiss the action on Defendants' motion. Plaintiff is instructed to file his motion for class certification on October 16, 1998 and notice it for November 20, 1998 at 10:00 a.m. Defendants will have until October 30 to oppose, and Plaintiff will have until November 6 to reply.

Because Proposed Pro–Plan Intervenors are putative class members, the Order denying their motion to intervene does not prevent them from seeking to serve as class representatives or from filing an opposition to any motion for class certification filed by Plaintiff.

A Case Management Conference will be held on November 20, 1998 at 10:00 a.m.